REVISED April 22, 2009

IN THE UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**

April 15, 2009

Charles R. Fulbruge III
Clerk

No. 08-20140

GERALDINE NICHOLAS, Individually and as Administratrix of the Estate
of James Nicholas

Plaintiff-Appellant

v.

KBR INC; M W KELLOGG CO; BROWN & ROOT; HALLIBURTON

Defendants-Appellees

Appeal from the United States District Court
for the Southern District of Texas

Before HIGGINBOTHAM, ELROD, and HAYNES, Circuit Judges.

HAYNES, Circuit Judge:

Geraldine Nicholas appeals the district court's denial of her motion to compel arbitration of her contract dispute with KBR, Inc., the successor corporation of her deceased husband's former employer, M.W. Kellogg Co. Nicholas contends that the district court improperly ruled that she waived her right to arbitrate her dispute with KBR. For the reasons set forth below, we conclude that the district court did not err when it found that Nicholas substantially invoked the judicial process to the prejudice of KBR. Consequently, we affirm the district court's judgment.

## I. FACTS

James Nicholas was an employee of Kellogg when he developed mesothelioma, a fatal form of lung cancer associated with asbestos exposure. On December 24, 1998, Kellogg executed a written severance agreement with Mr. Nicholas (the "Agreement"). Under the Agreement, Kellogg agreed to continue Mr. Nicholas's "company-provided" benefits and Mr. Nicholas agreed to release Kellogg from liability for any claims he had against it. The Agreement also contained an arbitration clause.

Mr. Nicholas took a medical leave of absence from his job in late 1998 and continued to receive health insurance benefits at active employee rates. He died in December 2006.

Mr. Nicholas's wife, Geraldine Nicholas, filed this lawsuit in Texas state court on January 17, 2007, alleging that KBR breached the Agreement with her husband by failing to pay his life insurance benefits. Although Nicholas did not attach the Agreement to her original petition, she described in her petition a severance agreement executed by Kellogg and her husband in "December of 1998." She also alleged that the agreement she described contained Kellogg's guarantees of additional "benefits," "salary," and "payments," and Mr. Nicholas's release of Kellogg from any potential liability. Nicholas's petition, however, neither mentioned the Agreement's arbitration clause nor gave any other indication that she wanted to arbitrate her claims.

KBR removed the case to federal court on February 23, 2007. Thereafter, Nicholas filed a motion to remand, or, in the alternative, to amend the pleadings. On April 18, 2007, the district court denied Nicholas's motion to remand, but granted her motion for leave to amend. In denying the motion to remand, the district court found that section 502(a)(1)(B) of ERISA, 29 U.S.C. § 1132(a)(1)(B) (2006), completely preempted Nicholas's state law claims because they sought

to recover benefits allegedly due her deceased husband under KBR's benefits plan. See Metro. Life Ins. Co. v. Taylor, 481 U.S. 58, 66 (1987).

Nicholas filed her first amended complaint on May 2, 2007. The amended complaint reiterated Nicholas's allegations concerning KBR's breach of the Agreement. As she did in her original petition, Nicholas did not mention the Agreement's arbitration clause or otherwise indicate that she wanted to arbitrate her claims.

On June 19, 2007, the parties filed their Joint Discovery/Case Management Plan. Shortly thereafter, the district court issued a scheduling order. The order set a discovery cutoff of February 1, 2008, a pretrial motions deadline of February 22, 2008, and a docket call for April 25, 2008.

Shortly after the district court issued its scheduling order, KBR served written discovery on Nicholas. Nicholas responded to that discovery without raising arbitration or otherwise objecting. Nicholas also sat without objection for her deposition.

In her deposition, portions of which were included as an attachment to KBR's response to the motion to compel, Nicholas admitted that a copy of the Agreement was in her possession in her late husband's files.[1] She also admitted that she may have seen a copy of that document prior to finding the original in his files in the spring of 2007.[2] She further admitted to having a discussion in January of 2007 with someone at KBR regarding whether her husband signed an agreement to arbitrate.

---

[1] "Q: What caused you to believe that [your husband had signed an arbitration agreement] in that time frame? A: I found a document in his file. Q: And what document was that? A: It was a letter agreement he signed dated December of '98.'"

[2] "Q: So when you found the original [of the Agreement] in this spring 2007 time frame, are you saying that you may have seen that document or at least a copy of that document before? A. Yes. Q: Do you know when you first saw the document or a copy of it? A: No, I couldn't tell you when."

On November 20, 2007 – more than ten months after Nicholas sued KBR in Texas state court – Nicholas filed the underlying motion to compel arbitration. In the motion, Nicholas did not address the potential waiver of her right to arbitrate.

On December 4, 2007, Nicholas noticed the deposition of a third-party witness, Jim Wilhite, and proceeded to take his deposition on December 18, 2007.

On January 4, 2008, KBR filed a response to Nicholas's motion to compel arbitration and argued that Nicholas waived her right to arbitration by substantially invoking the judicial process to the prejudice of KBR. In the motion, KBR specifically argued that Nicholas was aware of the Agreement's arbitration clause when she filed her original petition in Texas state court in January 2007. Nicholas did not respond to KBR's argument that she waived arbitration. Indeed, she filed no reply or evidence of any kind.

The district court denied Nicholas's motion to compel arbitration. The court found that Nicholas's decision to file suit indicated a "disinclination" to arbitrate her claims, and that her failure to assert her right to arbitration for over ten months prejudiced KBR. Nicholas appeals that decision, arguing that the district court improperly ruled that she substantially invoked the judicial process to the prejudice of KBR.

## II. DISCUSSION

We have jurisdiction of this appeal even though the district court's denial of Nicholas's motion to compel arbitration is an interlocutory ruling. See Green Tree Fin. Corp.-Ala. v. Randolph, 531 U.S. 79, 86 (2000); 9 U.S.C. § 16(a)(1)(C). We review the legal question of whether Nicholas's conduct amounts to a waiver of arbitration de novo; however, we review the factual findings underlying the district court's waiver determination only for clear error. Subway Equip. Leasing Corp. v. Forte, 169 F.3d 324, 326 (5th Cir. 1999). The district court's

factual findings are clearly erroneous only if, after reviewing the record, we are firmly convinced that a mistake has been made. Baldwin v. Stalder, 137 F.3d 836, 839 (5th Cir. 1998).

The right to arbitrate a dispute, like all contract rights, is subject to waiver. Miller Brewing Co. v. Fort Worth Distrib. Co., 781 F.2d 494, 497 (5th Cir. 1986). Although waiver of arbitration is a disfavored finding, "[w]aiver will be found when the party seeking arbitration substantially invokes the judicial process to the detriment or prejudice of the other party." Id. at 496-97. A party generally invokes the judicial process by initially pursuing litigation of claims then reversing course and attempting to arbitrate those claims. See Gulf Guar. Life Ins. Co. v. Conn. Gen. Life Ins. Co., 304 F.3d 476, 484 (5th Cir. 2002). But "waiver can also result from some overt act in Court that evinces a desire to resolve the arbitrable dispute through litigation rather than arbitration." Id. (internal quotations omitted). One of the primary goals of arbitration is to avoid the expense of litigation. Price v. Drexel Burnham Lambert, Inc., 791 F.2d 1156, 1158 (5th Cir. 1986). In reviewing the question of whether the district court properly found waiver, then, we must look at two questions: (1) did Nicholas substantially invoke the judicial process, and if, so (2) was KBR prejudiced thereby?

A. Invocation of the Judicial Process

In the vast majority of cases involving the question of waiver, it is the party being sued that belatedly seeks arbitration. Here, in contrast, it is the plaintiff, who, despite filing suit and pursuing her claims in court for more than ten months, now seeks to compel arbitration. The district court concluded that Nicholas substantially invoked the judicial process by filing suit and pursuing her claims for over ten months before invoking her right to arbitrate. We agree.

Although this circuit has not expressly drawn a distinction between the waiver analysis when applied to a plaintiff and that applied to a defendant, we

have recognized that the decision to file suit typically indicates a "disinclination" to arbitrate. *Joseph Chris Pers. Servs. Inc. v. Rossi*, 249 Fed. Appx. 988, 991 (5th Cir. 2007) (unpublished); *see also Miller*, 781 F.2d at 497 (concluding that a party revealed a "disinclination to resort to arbitration" by, among other things, filing suit in state court without mentioning its desire to arbitrate). We have not, however, gone as far as the Seventh Circuit on this issue, and we do not do so here, as we continue to require a showing of prejudice, even if there is a substantial invocation of the process. *See Cabinetree of Wis., Inc. v. Kraftmaid Cabinetry, Inc.*, 50 F.3d 388, 390 (7th Cir. 1995) (holding that a party's "election to proceed before a nonarbitral tribunal for the resolution of a contractual dispute is a presumptive waiver of the right to arbitrate.").[3]

We conclude that the act of a plaintiff filing suit without asserting an arbitration clause constitutes substantial invocation of the judicial process, unless an exception applies. Indeed, short of directly saying so in open court, it is difficult to see how a party could more clearly "evince[ ] a desire to resolve [a] . . . dispute through litigation rather than arbitration," *Gulf Guar.*, 304 F.3d at 484, than by filing a lawsuit going to the merits of an otherwise arbitrable dispute. We emphasize that the legal standard for waiver is the same regardless of which party is the party alleged to have waived arbitration. Differences between the two sides arise from the voluntariness and timing of their actions, not the legal standard.

---

[3] Nicholas argues that a plaintiff who files suit without mentioning an arbitration clause is the same as a defendant who files a counterclaim without mentioning an arbitration clause. However, the two are not necessarily the same. A plaintiff chooses the judicial forum, a defendant is then compelled to respond. Under Federal Rule of Civil Procedure 13(a)(1)(A), a counterclaim is compulsory if it, among other things, "arises out of the transaction or occurrence that is the subject matter of the opposing party's claim." A defendant, then, is subject to the potential risk of losing his claim if he fails to assert it as a counterclaim in response to a plaintiff's lawsuit. Thus, the two situations are not analogous.

That is not to say there can be no exceptions. There are lawsuits that can be filed that would not be inconsistent with seeking arbitration. For example, a plaintiff might file suit solely to obtain a threshold declaration as to whether a valid arbitration agreement existed. See Republic Ins. Co. v. Paico Receivables LLC, 383 F.3d 341, 345 (5th Cir. 2004) (determining that party's decision to file suit to determine whether a valid arbitration clause existed did not indicate a disinclination to arbitrate because filing suit for this purpose is not inconsistent with the right to arbitrate). A plaintiff might also have to file suit to obtain injunctive relief pending arbitration. See Joseph, 249 Fed. Appx. at 991 (refusing to conclude that filing suit in that case indicated a disinclination to arbitrate because plaintiff filed suit solely to obtain injunctive relief pending arbitration and both state law and the parties' contract permitted filing suit for this limited purpose). Other situations may arise justifying an exception; the list here should not be seen as exhaustive.

This case presents no situation that would constitute an exception. Rather, as the district court concluded, Nicholas had no reason to file suit other than to litigate the claims she now seeks to arbitrate. Under these circumstances, we find that Nicholas's decision to file suit on her otherwise arbitrable claims constitutes substantial invocation of the judicial process as to those claims.

Other evidence supports the district court's conclusion that Nicholas engaged in substantial litigation activity before asserting her right to arbitration. She filed a motion to remand following removal, arguing that ERISA did not completely preempt her state law claims; the district court disagreed and denied that motion. Nicholas's belated decision to seek arbitration is particularly troubling given that it came on the heels of this

adverse ruling.[4]  See Cabinetree, 50 F.3d at 391 (expressing particular concern with plaintiffs that want to test the waters in litigation before deciding whether they would be better off in arbitration).  Moreover, after the district court denied the motion to remand, Nicholas filed an amended complaint, made initial disclosures, engaged in a meet-and-confer, and responded to KBR's discovery requests.  The motion to compel arbitration also arrived shortly after a counsel change.

Before this court, Nicholas now argues as an excuse for her substantial invocation of the judicial process that neither she nor her lawyers had a copy of the Agreement when she filed suit, and thus she claims that she sued KBR in ignorance of her right to arbitrate.  However, Nicholas failed to raise this point in the district court.  KBR specifically argued in its response to Nicholas's motion to compel arbitration that Nicholas was aware of the Agreement's arbitration clause when she filed her original petition in January 2007.  Yet, Nicholas chose not to file a reply and respond to that argument.  Indeed, a review of the record reveals that Nicholas nowhere sought to contravene KBR's claim that she waived arbitration in the court below. Thus, we need not address Nicholas's arguments concerning her lack of knowledge of an agreement to arbitrate or her need to authenticate it for the first time on appeal.  See, e.g., LeMaire v. Louisiana, 480 F.3d 383, 387 (5th Cir. 2007) ("[A]rguments not raised before the district court are waived and cannot be raised for the first time on appeal.").

---

[4] Nicholas contends that she did not seek an affirmative ruling from the court because she did not seek a motion for summary judgment.  However, by filing a motion to remand contending that ERISA did not control this case and then losing on that point, she litigated a very significant legal question.  There is no guarantee that an arbitration panel would follow the district court's ERISA ruling, and appellate review of an arbitrator's award is severely circumscribed.  See Citigroup Global Mkts. Inc. v. Bacon, No. 07-20670, 2009 U.S. App. LEXIS 4543 (5th Cir. Mar. 5, 2009) (holding that manifest disregard of the law is no longer an independent ground for vacating an arbitration award under the Federal Arbitration Act).  Thus, this determination by the district court – and Nicholas's subsequent efforts to evade that determination – is significant.

Even if we reached this question for the first time on appeal, the result would not be different. Despite Nicholas's claims in the brief, the evidence from her deposition does not support her claim of ignorance. Indeed, it is a somewhat curious argument to claim ignorance of an agreement upon which one sues. As stated above, the deposition shows that she had the Agreement all along in her husband's files and may have seen a copy of it before the spring 2007 time frame when she found the original. She admits discussing the issue of arbitration with a KBR employee before she filed suit, which at least put her on notice of the need to inquire.

Nicholas substantially invoked the judicial process. Accordingly, we agree with the district court's resolution of this prong.

B. Prejudice

In addition to invocation of the judicial process, the party opposing arbitration must demonstrate prejudice before we will find a waiver of the right to arbitrate. Prejudice in the context of arbitration waiver refers to delay, expense, and damage to a party's legal position. Subway Equip. Leasing Corp. v. Forte, 169 F.3d 324, 327 (5th Cir. 1999) (citation omitted). What constitutes a waiver of arbitration is a fact-dependent inquiry. Tenneco Resins, Inc. v. Davy Int'l, AG, 770 F.2d 416, 420 (5th Cir. 1985).

While delay in asserting the right to arbitrate will not alone result in waiver, Gulf, 304 F.3d at 484, such delay "does bear on the question of prejudice, and may, along with other considerations, require a court to conclude that waiver has occurred." Republic, 383 F.3d at 346 (citation omitted). We have recognized that, "'where a party fails to demand arbitration . . ., and, in the meantime engages in pretrial activity inconsistent with an intent to arbitrate, the party later opposing a motion to compel arbitration may more easily show that its position has been compromised, i.e., prejudiced.'" Id. at 347 (quoting Price v. Drexel Burnham Lambert, Inc., 791 F.2d 1156, 1161 (5th Cir. 1986)).

Nicholas's delay in asserting her right to arbitrate was substantial and wholly unexplained in the district court. She judicially pursued her claims for over ten months without mentioning the Agreement's arbitration clause or her desire for arbitration. In this relatively straightforward case, that delay virtually guaranteed that the district court would not rule on Nicholas's motion to compel until the parties had completed discovery and KBR had begun preparing its motion for summary judgment.[5]

Although KBR did not put on evidence in terms of dollars and cents of its litigation costs in the district court, the record supports the district court's finding that KBR's litigation activities were significant in the context of this dispute: KBR removed the case to federal court based on ERISA preemption principles; successfully opposed Nicholas's motion to remand; answered Nicholas's complaints; propounded discovery requests; and deposed Nicholas. After Nicholas filed her motion to compel arbitration but before the district court ruled on it, KBR participated in Nicholas's deposition of a third-party witness. While these litigation activities in the context of a larger, more complex case might be characterized as minimal, it was not unreasonable for the district court to find that they carry particular significance given the limited scope and relatively straightforward nature of Nicholas's denial-of-benefits claims. Indeed, by sitting on her rights for over ten months, Nicholas forced KBR to conduct the bulk of activity necessary to defend against her claims. Short of actually trying the case, it is unclear what additional litigation costs KBR could have incurred in this dispute. These are precisely the expenses of litigation that arbitration is designed to avoid. See Price, 791 F.2d at 1161-62. Also, as mentioned above,

---

[5] Though prompt in relation to the filing of the motion and response, the court's ruling came after the discovery cutoff date set in the pretrial order and just ten days before the deadline for filing dispositive motions. At that point, trial docket call was only a couple of months away.

KBR would be prejudiced by having to re-litigate in the arbitration forum the ERISA issue already decided by the district court in its favor.

Moreover, it is questionable whether Nicholas would have been permitted to depose a third-party witness in arbitration.[6] As we have recognized, "while discovery relating to non-arbitrable claims is not prejudicial, where the pretrial activity [is] related to all of the parties' claims, including those that [are] conceded to be arbitrable, [compelling] arbitration would result in prejudice." Republic, 383 F.3d at 346.

Given these facts, we cannot conclude that the district court clearly erred in finding that Nicholas's delay in seeking arbitration prejudiced KBR.

## III. CONCLUSION

Because Nicholas substantially invoked the judicial process to the prejudice of KBR, the district court's waiver determination is AFFIRMED and the case is REMANDED for further proceedings in accordance with this opinion.

---

[6] While Nicholas notes that Rule 9 of the American Arbitration Association Employment Arbitration Rules grants arbitrators authority to order discovery, including depositions, the arbitrator's exercise of that authority is completely discretionary. Thus, Nicholas could not have obtained this deposition in arbitration as a matter of right.