**Lucinda VINE, Kristy Pond, on behalf of themselves and for all others similarly situated, Plaintiffs**

**v.**

**PLS FINANCIAL SERVICES, INC., and PLS Loan Store of Texas, Inc., Defendants.**

**EP–16–CV–31–PRM**

United States District Court, W.D. Texas, El Paso Division.

Signed 08/11/2016

H. Mark Burck, Daniel R. Dutko, Hanszen Laporte LLP, Houston, TX, M. Mitchell Moss, Finger & Thurmond, P.C., El Paso, TX, Priscilla Marquez, Scott Hulse, P.C., El Paso, TX, for Plaintiffs.

Richard Andrew Bonner, Jose Abelardo Howard-Gonzalez, Mark N. Osborn, Shelly W. Rivas, Kemp Smith LLP, El Paso, TX, for Defendants.

## MEMORANDUM OPINION AND ORDER DENYING DEFENDANTS' MOTION TO RECONSIDER AND GRANTING DEFENDANTS' MOTION TO STAY

PHILIP R. MARTINEZ, UNITED STATES DISTRICT JUDGE

On this day, the Court considered:

**Motion to Reconsider**

- Defendants PLS Financial Services, Inc. and PLS Loan Store of Texas, Inc.'s "Motion to Reconsider the Court's Order Denying Defendants' Motions To Compel Arbitration" (ECF No. 39) [hereinafter "Motion"], filed on June 17, 2016;

1. Plaintiffs bring this suit on behalf of them-

   ○ Plaintiffs Lucinda Vine and Kristy Pond's [1] "Response to Defendants' Motion to Reconsider the Court's Order Denying Defendants' Motions to Compel Arbitration" (ECF No. 41) [hereinafter "Response"], filed on June 23, 2016;

   ○ Defendants' "Reply to Plaintiffs' Response to Defendants' Motion to Reconsider the Court's Order Denying Defendants' Motions to Compel Arbitration" (ECF No. 42) [hereinafter "Reply"], filed on June 30, 2016;

**Motion to Stay**

- Defendants' "Motion to Stay Proceedings Pending Defendants' Motion to Reconsider and Interlocutory Appeal" (ECF No. 44) [hereinafter "Motion to Stay"], filed on July 1, 2016;

   ○ Plaintiffs' "Response to Defendants' Motion to Stay Proceedings Pending Defendants' Motion to Reconsider and Interlocutory Appeal" (ECF No. 46), filed on July 8, 2016; and

   ○ Defendants' "Reply in Support of their Motion to Stay Proceedings" (ECF No. 48), filed on July 15, 2016;

in the above-captioned cause.

After due consideration, the Court is of the opinion that Defendants' Motion will be denied for the reasons that follow. Additionally, the Court will grant Defendants' Motion to Stay.

## I. FACTUAL AND PROCEDURAL BACKGROUND

Plaintiffs instituted this class action lawsuit against Defendants for, *inter alia*, malicious prosecution. Pls.' First Am. Class Action Compl. 5, Mar. 11, 2016, ECF No. 17 [hereinafter "Complaint"]. Defendants

selves and for all others similarly situated.

provide short-term loans to borrowers who are required to present post-dated blank personal checks for the amount borrowed plus a finance charge. Compl. 3. Plaintiffs were clients who obtained these short-term loans. *Id.* As holders,[2] Defendants would allegedly deposit these post-dated or blank personal checks if a borrower missed a payment. *Id.* According to Plaintiffs, after their checks would "bounce[ ]," Defendants would threaten the delinquent borrowers with criminal prosecution. *Id.*

On June 6, 2016, the Court denied Defendants' motions to dismiss and to compel arbitration. Mem. Op. & Order Den. Defs.' Mots, to Dismiss and to Compel Pls. to Arbitration, June 6, 2016, ECF No. 37 [hereinafter "Order"]. Despite the presence of an arbitration agreement between Defendants and Plaintiffs, the Court concluded that Defendants waived their right to arbitrate. Order 17–18. Specifically, the Court held that Defendants had invoked the judicial process resulting in prejudice to Plaintiffs. *Id.* at 15–19.

Defendants now request that the Court reconsider its Order, arguing that (1) criminal charges were not filed against Plaintiffs; (2) criminal matters are non-arbitrable; (3) the *In re Christus Spohn Health System Corp.*, 231 S.W.3d 475, 481 (Tex. App.–Corpus Christi 2007, no pet.) decision is different from the instant action; (4) Plaintiffs did not suffer any prejudice; and (5) that an arbitrator should decide the issue of waiver. The Court will address each argument in turn.

## II. LEGAL STANDARD

█ The Federal Rules of Civil Procedure do not recognize a "motion for reconsideration" by that name, and Defendants did not provide a rule of procedure under which they urge their Motion. A court may reconsider an interlocutory order pursuant to Federal Rule of Civil Procedure 54(b). While the Court has authority to reconsider and reverse its decision for any reason it deems sufficient, district courts consistently utilize the standards of Federal Rule of Civil Procedure 59 to inform their analysis of a reconsideration request. *Saqui v. Pride Cent Am., LLC*, 595 F.3d 206, 210–11 (5th Cir. 2010) (citing *Lavespere v. Niagara Mach. & Tool Works, Inc.*, 910 F.2d 167, 185 (5th Cir. 1990)); *Vladmir Ltd. v. Pac. Parts Supply Co.*, No. SA–08–CV–819XR, 2009 WL 4110288, at *2 (W.D. Tex. Nov. 20, 2009). To prevail on a Rule 59 motion, the movant must show at least one of the following: "(1) an intervening change in controlling law; (2) the availability of new evidence not previously available; or (3) the need to correct a clear error of law or prevent manifest injustice." *In re Benjamin Moore & Co.*, 318 F.3d 626, 629 (5th Cir. 2002). Defendants' Motion appears to be premised on the argument that reconsideration is necessary to correct an error of law or fact, or to prevent manifest injustice.

## III. DISCUSSION

### A. Criminal Charges were Not Filed against Plaintiffs

█ In its Order, which the Defendants ask the Court to reconsider, the Court held that Defendants had invoked the judicial process by "initiat[ing] a process that invites Texas district attorneys' offices to address issues that are at stake in the instant action." Order 15. Defendants now contend that the Court erred in this conclusion for two reasons. First, they aver that no criminal charges were filed against

2. A holder is a "person in possession of a negotiable instrument that is payable either to bearer or to an identified person." Tex. Bus. & Com. Code § 1.201(b)(21)(A). A check's drawer is the one who signs or is otherwise identified as a person ordering payment. *Id.* at § 3.103(a)(5).

Plaintiffs. Mot. 3. Second, Defendants proffer that criminal charges can never "be filed against Plaintiffs based on the [worthless-check] affidavits because the limitations period for filing criminal charges has passed." *Id.*

In their Response, Plaintiffs contend that Defendants did initiate the criminal law process by filing worthless-check affidavits. *See* Resp. Ex. A, at 5. In addition, Plaintiffs argue that Defendants' worthless-check affidavits tolled the statute of limitations. Resp. 5.

Regarding Defendants' first argument, the Court accepted Plaintiffs' facts as true when it considered Defendants' motions to compel arbitration. *See* Order 2 n.2 (citing *See Suburban Leisure Ctr., Inc. v. AMF Bowling Prods., Inc.*, 468 F.3d 523, 525 (8th Cir. 2006) (stating that a motion to compel arbitration is generally treated as a motion to dismiss for failure to state a claim upon which relief can be granted); *Palcko v. Airborne Express, Inc.*, 372 F.3d 588, 597 (3d Cir. 2004) (noting the same)); *see also Schnabel v. Trilegiant Corp.*, 697 F.3d 110, 113 (2d Cir. 2012) (when resolving a defendant's "motion to compel arbitration, [the Court] accept[s] as true ... factual allegations in the plaintiffs' complaint that relate to the underlying dispute between the parties").

In their Complaint, Plaintiffs allege that Defendants "illegally and wrongfully used the criminal justice system to collect payday loans through the wrongful filing of criminal charges." Compl. 3. Indeed, one of Plaintiffs' causes of action, malicious prosecution, necessarily entails that a criminal prosecution was filed. *See* Compl. 5; *see also Shields v. Twiss*, 389 F.3d 142, 152

(5th Cir. 2004) (emphasis added) ("Under Texas law, a plaintiff alleging malicious prosecution must establish ... the *commencement of a criminal prosecution against him ...*." (citing *Richey v. Brookshire Grocery Co.*, 952 S.W.2d 515, 517 (Tex. 1997))). Therefore, considering both the Complaint's factual allegations and the malicious prosecution cause of action, the Court, at this stage of the proceeding, correctly accepted Plaintiffs' facts as true when it considered Defendants' motions to compel arbitration.

Next, the Court need not tackle Defendants' second argument that the statute of limitations has run its course. Defendants aver that the statute of limitations for filing criminal charges against Plaintiffs is two years from the "date of the commission of the offense." Mot. 3 (quoting Tex. Code of Crim. Proc. § 12.02).[3] In turn, Plaintiffs respond that the statute of limitations was tolled when an "indictment, information, or complaint is filed in a court of competent jurisdiction." *See* Resp. 4; *see also* Tex. Code of Crim. Proc. § 12.05. In their Reply, Defendants reiterate that the statute of limitations was not tolled because no criminal charges were ever filed. Reply 2.

Again, Defendants' statute-of-limitations argument hinges on a factual issue— whether criminal charges were filed against Plaintiffs. To repeat, the Court will not make a factual determination regarding whether charges were filed against Plaintiffs because the Court accepts the facts Plaintiffs allege in their Complaint as true. *See* Order 2 n.2.

---

**3.** The purported worthless-check affidavits indicated that Plaintiffs' checks were in the amounts of $905.23 and $314.82. *See* Pls.' Unopposed Mot. for Leave to File Resp. to Defs.' Mots. to Dismiss, and Compel Pls. to Arbitration, Ex. A, Apr. 22, 2016, ECF No.

25–2. Texas categorizes its misdemeanors based on the amount of the property stolen— $100 to $750 for a Class B and $750 to $2,500 for a Class A. *See* Tex. Penal Code § 31.03.

Given that the Court must accept Plaintiffs' facts as true, the Court found—and still finds—that Defendants initiated a process that invited Texas district attorneys' offices to consider filing criminal charges based upon the Defendants' election to file worthless-check affidavits. Therefore, Defendants contention that no criminal charges were filed against Plaintiffs is unavailing at this stage of the proceeding.

## B. Criminal Matters are Non–Arbitrable

■ The Court agrees with Defendants that criminal statutes in a vacuum are non-arbitrable. Yet, the Supreme Court has recognized that civil statutes—that have parallel criminal laws—are arbitrable. *See Shearson/Am. Exp., Inc. v. McMahon*, 482 U.S. 220, 240, 107 S.Ct. 2332, 96 L.Ed.2d 185 (1987) ("We similarly find that the criminal provisions of [Racketeer Influenced and Corrupt Organizations Act ("RICO") ] do not preclude arbitration of bona fide civil actions brought under [RICO]."). To be sure, *McMahon* has recognized that private parties can bring both civil RICO and antitrust claims "even though such conduct may also give rise to claims of criminal liability." *Id.* Therefore, by analogy, the potential theft-by-check convictions "do not preclude arbitration of" parallel civil actions. *See id.*

The central issue remains: whether the initiation of a theft-by-check criminal complaint constitutes a substantial invocation of the judicial process. The Court previously held that "[t]he specific claim in the instant action concerns the issue of non-payment from which all Plaintiffs' causes of actions derive." Order 16. To this end, the Court will now utilize the *McMahon* holding as a framework in the instant matter.

As the Court previously noted, "[t]he Fifth Circuit precedent does not require that a defendant litigate *identical* claims

to invoke the judicial process, but rather 'a *specific* claim.' " Order 16 (emphasis in original) (quoting *Subway Equip. Leasing Corp. v. Forte*, 169 F.3d 324, 328 (5th Cir. 1999)); *see also C.C.N. Managed Care, Inc. v. Shamieh*, 374 Fed.Appx. 506, 509 (5th Cir. 2010) (per curiam ) (noting that despite "[e]ach party ha[ving] a different characterization of the state court litigation ... it involved the same claims as those in the federal action"). Given the *McMahon* framework, the Court must ascertain whether Texas provides a comparable civil remedy for those holders who are aggrieved by the crime of theft by check.

■ With this in mind, Texas does afford holders civil recourse. "[W]hen a bank dishonors a check, the drawer of the check is obligated to pay the amount of the check to the check's holder according to its terms at the time it was issued" *1/2 Price Checks Cashed v. United Auto. Ins. Co.*, 344 S.W.3d 378, 380 (Tex. 2011) (citing Tex. Bus. & Com. Code § 3.414(b)) (recognizing that a holder can bring a suit "asserting breach of contract on the basis of the obligation owed by the drawer of a check under Texas Business and Commerce Code section 3.414"). Many other states similarly provide a private right of action against the drawer. *See, e.g.,* Cal. Civ. Code § 1719 (relief equal to treble the amount of the check, which shall not be less than $100 nor more than $1,500); 810 Ill.Comp. Stat. Ann. 5/3–806 (relief shall include the greater of $25 or all costs and expenses, including reasonable attorney fees); La. Stat. Ann. § 9:2782 (relief of twice the amount so owing, but in no case less than $100 plus attorney fees and court costs); Miss. Code Ann. § 11–7–12 (relief of the face amount of the check, draft or order, and: (1) a service charge of $30 and reasonable attorney fees if the check is $25 or less; or (2) a service charge of $40 and reasonable attorney fees if the check is

over $25); N.Y. Gen. Oblig. Law § 11–104 (relief of liquidated damages no greater than twice the amount of the check or $400, whichever is less).

Ultimately, to invoke the judicial process, Defendants could only raise parallel civil claims that are similar to the potential theft-by-check criminal charges. As discussed previously, federal law affords aggrieved private parties the ability to pursue civil antitrust or RICO claims in arbitration. *See McMahon*, 482 U.S. at 240, 107 S.Ct. 2332. Similarly, Texas law allows private parties to pursue claims in civil court based upon theft by check claims. *See 1/2 Price Checks Cashed*, 344 S.W.3d at 380 (citing Tex. Bus. & Com. Code § 3.414(b)).

Therefore, the Court concludes that Defendants' filing of worthless-check affidavits amounts to "a *specific* claim [Defendants] subsequently want [ ] to arbitrate." *See Subway Equip. Leasing Corp.*, 169 F.3d at 328 (emphasis added).

#### C. *Christus Spohn* Decision is Different from the Instant Action

Defendants next argue that the Court's reliance on *Christus Spohn* is misplaced because the facts are different in the instant action. Mot. 6. Specifically, Defendants did not (1) submit worthless-check affidavits while any civil proceedings were pending; (2) seek any advantage in any civil proceeding; or (3) submit any worthless-check affidavits in any court. *Id.*

All three of Defendants' arguments are unavailing. The Court recognizes—then and now—that the facts in the *Christus Spohn* are different than those in the instant action. In fact, in its Order, the Court never indicated that the cases were identical or that the *Christus Spohn* decision was controlling. *See* Order 13. Rather, the Court found *Christus Spohn's* reasoning "instructive" because, akin to the instant action, the *Christus Spohn* hospital took action as part of their "strategic plan of defense in the underlying matter that would be inconsistent with a right to arbitrate." *See id.* at 13, 16 (quoting *In re Christus Spohn Health Sys. Corp.*, 231 S.W. at 481).[4]

#### D. Plaintiffs Did Not Suffer Any Prejudice

■■■■ Finally, Defendants contend that Plaintiffs did not suffer any prejudice from the filing of the worthless-check affidavits. Mot. 7. Defendants renew their previously unavailing arguments:[5] "A motion for reconsideration may not be used to rehash rejected arguments or introduce new arguments." *LeClerc v. Webb*, 419 F.3d 405, 412 n.13 (5th Cir. 2005). "Motions to reconsider based on recycled arguments only serve to waste the resources of the court, and are

---

4. The Court also acknowledges that another Texas court of appeals has since decided an issue that mirrors the one currently before the Court—whether a payday loan company that affirmatively submits documentation for the initiation of criminal charges and attendant proceedings has invoked the judicial process and thereby waived the right to compel arbitration in a subsequent civil action. *See Cash Biz, LP v. Henry*, No. 04–15–00469–CV, 2016 WL 4013794, at *1 (Tex. App.–San Antonio July 27, 2016, no pet. h.). In *Cash Biz*, a majority opinion decided that the filing of worthless-check affidavits was "not sufficiently active or deliberate to constitute substantial

invocation of the judicial process." *Id.* at *7. Nonetheless, Defendants' election to file worthless-check affidavits is, in the Court's opinion, an attempt to achieve a satisfaction of a civil debt via a criminal process. To be sure, Defendants will avail themselves as witnesses for the prosecution in this self-initiated criminal process. Such calculated actions can only be viewed as "active" and "deliberate." *See id.*

5. Defendants argue that Plaintiffs did not bear any expense defending criminal charges or suffer issue preclusion because no criminal charges were ever filed. Mot. 8.

not the proper vehicle to rehash old arguments or advance legal theories that could have been presented earlier." *Krim v. pcOrder.com, Inc.*, 212 F.R.D. 329, 331 (W.D. Tex. 2002) (alterations and citation omitted).

Defendants have presented "recycled arguments"—all of which have been fully considered in the Court's Order. *See Krim*, 212 F.R.D. at 331. The Court draws the same conclusion as before: Plaintiffs' legal position would be compromised in a civil action if Plaintiffs were convicted of theft by check—a process initiated unilaterally by Defendants' strategy of filing worthless-check affidavits. *See* Order 19 (citing *Nicholas v. KBR, Inc.*, 565 F.3d 904, 910 (5th Cir. 2009)).

Moreover, Defendants contend that the Court erred when it "found that Plaintiffs suffered prejudice on contingencies that could happen *if* criminal charges were filed." Mot. 7 (emphasis in original). As discussed *supra*, Defendants simply reassert their argument that no criminal charges were filed against Plaintiffs. *See supra* Section III.A. Again, because the Court must view Plaintiffs' Complaint in the light most favorable to them, Plaintiffs have asserted, and the Court is duty-bound to accept, that criminal charges were filed. *See id.*

Therefore, the Court finds Defendants' "recycled arguments" about prejudice unpersuasive.

### E. An Arbitrator Should decide the Issue of Waiver

■ For the first time, Defendants argue that an arbitrator, and not a court, should decide whether Defendants waived their right to arbitrate. Mot. 8.[6] To bolster their contention, Defendants cite to a 2014 United States Supreme Court case where it held that "courts presume that the parties intend arbitrators, not courts, to decide disputes about the meaning and application of particular ***procedural preconditions*** for the use of arbitration." *BG Grp., PLC v. Republic of Argentina*, —— U.S. ——, 134 S.Ct. 1198, 1207, 188 L.Ed.2d 220 (2014) (emphasis added) (citing *Howsam v. Dean Witter Reynolds, Inc.*, 537 U.S. 79, 86, 123 S.Ct. 588, 154 L.Ed.2d 491 (2002)). "These procedural matters include claims of waiver, delay, or a like defense to arbitrability." *Id.* (citation omitted).

In *Howsam*, the Supreme Court held that the arbitrator, and not a court, should decide the issue of whether an arbitration claim was barred by a six-year limitations period embedded in the arbitration rules under which the parties had agreed to arbitrate. *Howsam*, 537 U.S. at 85–86, 123 S.Ct. 588. In *BG Group*, the Supreme Court held that the arbitrator, and not a court, should decide whether a precondition to arbitrate had been satisfied. *BG Grp.*, 134 S.Ct. at 1207–08. Ultimately, the Supreme Court has held that arbitrators are authorized to "interpret and apply" "procedural provisions" of arbitration agreements. *See BG Grp.*, 134 S.Ct. at 1207.

Despite the holdings in *BG Group* and *Howsam*, the "Supreme Court did not intend ... to upset the 'traditional rule' that courts, not arbitrators, should decide the question of whether a party has waived its right to arbitrate by actively litigating the case in court." *See Ehleiter v. Grapetree Shores, Inc.*, 482 F.3d 207, 217–18 (3d Cir. 2007) (analyzing *Howsam*).

Courts have generally viewed themselves as the appropriate forum for decid-

---

6. "A motion for reconsideration may not be used to rehash rejected arguments or *introduce new arguments*." *LeClerc v. Webb*, 419 F.3d 405, 412 (5th Cir. 2005) (emphasis added). Nevertheless, the Court will address Defendants' argument whether a court or arbitrator should decide the waiver issue.

ing whether litigation activity waives the right to compel arbitration. *See, e.g., Grigsby & Assocs., Inc. v. M. Sec. Inv.,* 664 F.3d 1350, 1353 (11th Cir. 2011) ("Today we conclude that it is presumptively for the courts to adjudicate disputes about whether a party, by earlier litigating in court, has waived the right to arbitrate."); *JPD, Inc. v. Chronimed Holdings, Inc.,* 539 F.3d 388, 393 (6th Cir. 2008) ("[W]e join the First and Third Circuits in holding that the court, not the arbitrator, presumptively evaluates whether a defendant should be barred from seeking a referral to arbitration because it has acted inconsistently with reliance on an arbitration agreement."); *Perry Homes v. Cull,* 258 S.W.3d 580, 588 (Tex. 2008) ("[F]ederal courts do not defer to arbitrators when waiver is a question of litigation conduct[.]"); *Ehleiter,* 482 F.3d at 221 ("[W]e hold that waiver of the right to arbitrate based on litigation conduct remains presumptively an issue for the court to decide in the wake of *Howsam* .... "); *Marie v. Allied Home Mortgage Corp.,* 402 F.3d 1, 14 (1st Cir. 2005) ("*Howsam* ... did not intend to disturb the traditional rule that waiver by conduct, at least where due to litigation-related activity, is presumptively an issue for the court."); *Tristar Fin. Ins. Agency v. Equicredit Corp. of Am.,* 97 Fed.Appx. 462, 465 (5th Cir. 2004) (per curiam ); *but see Nat'l Am. Ins. Co. v. Transamerica Occidental Life Ins. Co.,* 328 F.3d 462, 466 (8th Cir. 2003) (determining, without significant discussion, that the issue of waiver is one for the arbitrator to decide).

The Court recognizes that these circuit cases that questioned *Howsam's* reach were decided before the Supreme Court's holding in *BG Group.* Nevertheless, the reasoning of these sister circuits remains persuasive even after *BG Group.* The *Howsam* and *BG Group* opinions analyzed "waiver, delay, or a like defense to arbitra-

bility" within the context of "non-compliance with contractual conditions precedent to arbitration"—not waiver claims based on litigation activity. *See Ehleiter,* 482 F.3d at 219 ("Properly considered within the context of the entire opinion, however, we believe it becomes clear· that the [Supreme] Court was referring only to waiver, delay, or like defenses arising from non-compliance with contractual conditions precedent to arbitration.").

The Fifth Circuit has peripherally weighed in on this issue in an unpublished case decided after *Howsam,* but before *BG Group. See Tristar Fin. Ins. Agency, Inc.,* 97 Fed.Appx. at 464. In *Tristar,* the Fifth Circuit held that the defendant had not waived their right to arbitration even after they threatened litigation, filed motions in the district court action, conducted discovery, and waited eight months to file a motion to compel arbitration because the plaintiff had not suffered "unfair prejudice." *Id.* The Fifth Circuit found that the district court was "in the best decision possible" to determine the waiver issue due to the "conduct of the parties before" that same district court. *Id.* Unlike other circuit courts, the Fifth Circuit did not conduct a thorough analysis of the *Howsam* holding. *Compare Tristar Fin. Ins. Agency, Inc.,* 97 Fed.Appx. at 464 *with Marie,* 402 F.3d at 12.

Without Fifth Circuit precedent to the contrary, the Court holds that it should decide the issue of waiver instead of an arbitrator for two reasons. First, courts should decide the issue of waiver because they are equipped with "greater expertise in recognizing and controlling abusive forum-shopping." *See Grigsby & Assocs., Inc.,* 664 F.3d at 1354. Second, having an arbitrator decide the issue of waiver is an inefficient process. As the First Circuit articulated,

[S]ending waiver claims to the arbitrator would be exceptionally inefficient. A

waiver defense is raised by one party to a lawsuit in response to another party's motion to compel arbitration or stay judicial proceedings on the basis of an arbitration agreement signed by the parties. If the arbitrator were to find that the defendant had waived its right to arbitrate, then the case would inevitably end up back before the district court with the plaintiff again pressing his claims. The case would have bounced back and forth between tribunals without making any progress.

*Marie*, 402 F.3d at 13–14.

Therefore, the Court concludes that the issue of waiver in the context presently before the Court should be determined by the Court and not an arbitrator.

### F. Motion to Stay

■■■■ "A stay is not a matter of right .... It is instead an exercise of judicial discretion, and the propriety of its issue is dependent upon the circumstances of the particular case." *Nken v. Holder*, 556 U.S. 418, 433, 129 S.Ct. 1749, 173 L.Ed.2d 550 (2009) (alteration omitted). The Court looks to four factors when contemplating a motion for stay pending appeal: "(1) whether the stay applicant has made a strong showing that he is likely to succeed on the merits; (2) whether the applicant will be irreparably injured absent a stay; (3) whether issuance of the stay will substantially injure the other parties interested in the proceeding; and (4) where the public interest lies." *Id.* at 434, 129 S.Ct. 1749; *see also Weingarten Realty Inv'rs v. Miller*, 661 F.3d 904, 910 (5th Cir. 2011) (employing the same test). Under this four

factor test, the first two factors "are the most critical." *Nken*, 556 U.S. at 434, 129 S.Ct. 1749.

■■■■ Yet, "where there is a serious legal question involved and the balance of the equities heavily favors a stay ... the movant only needs to present a substantial case on the merits." *Weingarten Realty Inv'rs*, 661 F.3d at 910. Therefore, the Court can forgo an analysis of the remaining three factors and institute a stay pending appeal if the first factor weighs so heavily in favor of that stay. *See In re Deepwater Horizon*, 732 F.3d 326, 345 (5th Cir. 2013) (declining to analyze all four factors and instead granting a stay based on analysis of the first factor).

Here, the first factor weighs in favor of Defendants. The issue of whether the filing of criminal charges results in arbitration waiver is one of first impression before the Fifth Circuit. Relatedly, Defendants' new argument of the role between courts and arbitrators in deciding the issue of waiver has not been addressed in any circuit post *BG Group. See supra* Section III.E. In other words, the Fifth Circuit has not addressed whether waiver claims based on litigation activity fall within the sphere of *BG Group* and *Howsam. See Ehleiter*, 482 F.3d at 219.

■■■■ The Court finds that "serious legal question[s]" are "involved and the balance of the equities heavily favors a stay." *See Weingarten Realty Inv'rs*, 661 F.3d at 910. Thus, the Court will administratively close the case pending the Fifth Circuit's resolution of Defendants' interlocutory appeal.[7]

---

7. Administrative closure is the "practical equivalent of a stay." *Quinn v. CGR*, 828 F.2d 1463, 1465 (10th Cir. 1987). The First Circuit has explained the following regarding administrative closure:

> Administrative closings comprise a familiar albeit essential ad hoc, way in which courts remove cases from their active files without

making any final adjudication. The method is used in various districts throughout the nation in order to shelve pending, but dormant, cases .... [A]n administrative closing has no effect other than to remove a case from the court's active docket ... [and] ... d[oes] not terminate the underlying case, but, rather place[s] it in inactive

## IV. CONCLUSION

Accordingly, **IT IS ORDERED** that Defendants PLS Financial Services, Inc. and PLS Loan Store of Texas, Inc.'s "Motion to Reconsider the Court's Order Denying Defendants' Motions To Compel Arbitration" (ECF No. 39) is **DENIED.**

**IT IS FURTHER ORDERED** that Defendants PLS Financial Services, Inc. and PLS Loan Store of Texas, Inc.'s "Motion to Stay Proceedings Pending Defendants' Motion to Reconsider and Interlocutory Appeal" (ECF No. 44) is **GRANTED.**

**IT IS FURTHER ORDERED** that the **CLERK** of the Court shall **ADMINISTRATIVELY CLOSE** this matter, pending the United States Court of Appeals for the Fifth Circuit's resolution of Defendants PLS Financial Services, Inc. and PLS Loan Store of Texas, Inc.'s interlocutory appeal.

**IT IS FINALLY ORDERED** that that **CLERK** of the Court **TERMINATE** Plaintiffs Lucinda Vine and Kristy Pond's "Motion for Class Certification" (ECF No. 30) and "Motion for Order Finding Allegations in Plaintiffs' First Amended Class Action Complaint are Admitted" (ECF No. 31). Plaintiffs are granted leave to refile these Motions after the Fifth Circuit's resolution of Defendants PLS Financial Services, Inc. and PLS Loan Store of Texas, Inc.'s interlocutory appeal.

status until such time as the judge, in his discretion or at the request of a party, cho[o]se[s] either to reactivate it or dispose of it with finality.

*Lehman v. Revolution Portfolio L.L.C.,* 166 F.3d 389, 392 (1st Cir. 1999).