# United States Court of Appeals for the Fifth Circuit

United States Court of Appeals
Fifth Circuit

**FILED**

October 21, 2020

Lyle W. Cayce
Clerk

No. 19-50047

Frank Sabatelli, *on behalf of* himself and *on behalf of* all others similarly situated,

*Plaintiff—Appellant*,

*versus*

Baylor Scott & White Health; Scott & White Clinic,

*Defendants—Appellees*.

Appeal from the United States District Court
for the Western District of Texas
USDC No. 1:16-CV-596

Before Owen, *Chief Judge*, and Haynes and Costa, *Circuit Judges*.

Per Curiam:*

---

* Pursuant to 5th Circuit Rule 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5th Circuit Rule 47.5.4.

Frank Sabatelli was forced to resign from his job as a radiologist. He brought claims of age and disability discrimination in federal court. The district court rejected those claims at the summary judgment stage. Meanwhile, long after he brought this suit, Sabatelli filed an arbitration demand claiming that his forced termination violated the terms of his employment agreement. But the district court held that he could not pursue that arbitration after having first brought this lawsuit. We affirm the merits rulings on the discrimination claims and conclude that Sabatelli waived his right to arbitrate.

## I.

Frank Sabatelli began working as a radiologist for the Scott & White Clinic (SWC) in the Baylor Scott & White Medical Center when he was 52. Sabatelli's employment contract gave SWC authority to terminate him on 60-days' written notice if two-thirds of the board found he was "perceived as uncooperative, difficult to get along with," or "incompatible" with coworkers. It also required that "[a]ny controversies, disputes or claims arising out of or relating to this Agreement, or breach thereof" be "resolved solely by arbitration." It would not take long for controversy about his employment to arise.

We recite the history of Sabatelli's employment at the hospital in the light most favorable to him given the summary judgment posture. *See Wease v. Ocwen Loan Serv., L.L.C.*, 915 F.3d 987, 992 (5th Cir. 2019). But on any account, his two-year tenure did not go well.

Coworkers frequently complained about Sabatelli, describing him as "consistently hostile," "difficult to work with," and "demeaning." He made two colleagues cry. And several doctors spoke to him about complaints that he had "either yelled at or belittled [others] in a condescending manner." While Sabatelli cannot dispute that these complaints were made,

he disputes the underlying characterization of his conduct and says that the interpersonal issues were not his fault.[1]

Yet even Sabatelli acknowledges he had disagreements with nurse Jennifer Varner and technician Matt Alvarado. He believed that they were not only unprofessional, but also ageist. For instance, Varner once called Sabatelli an "old fart," and Alvarado said that he "was getting old and forgetful like [Sabatelli]." Sabatelli also said that Varner implied he, unlike the rest of the staff, was "old dead wood." To make things worse, Sabatelli had "routine conflicts" with Varner and Alvarado's supervisor. And although Sabatelli's own supervisor was normally courteous, the supervisor said several times that Sabatelli's medical terminology was an "old thing" from his "generation."

After dealing with these conflicts for two years, Dr. Rob Watson—SWC's chief medical officer and the person who had hired Sabatelli—met with Sabatelli and gave him the option of resigning or being terminated. Sabatelli remembers Watson saying during the meeting that he "d[id]n't know what [Sabatelli was] discussing with [his] psychiatrist." He also claims that Watson gave him no explanation for the decision. Watson, on the other hand, says he explained that Sabatelli had "continue[d] to have an abrasive personality" despite being counseled on his interpersonal problems. Whatever was said, all agree Sabatelli resigned the next day. SWC hired a doctor in his early forties to replace Sabatelli.

Sabatelli sued SWC in federal court, alleging that his forced resignation violated the Age Discrimination in Employment Act (ADEA) and

---

[1] Several doctors testified that they had not seen Sabatelli be argumentative or inappropriate in the workplace. And a former radiology manager testified that Sabatelli did not yell at or belittle other employees.

Americans with Disabilities Act (ADA).[2] SWC denied those allegations and noted that the claims fell within the employment agreement's broad arbitration provision. Yet no one moved to compel arbitration at the pleading stage. Nor did anyone seek arbitration during discovery, which culminated in SWC filing a summary judgment motion.

Sixteen months into the lawsuit, with summary judgment pending, Sabatelli filed an arbitration demand. He did not want to arbitrate the discrimination claims. He instead alleged for the first time that SWC breached the employment agreement by not giving him proper notice before terminating him. SWC asked the arbitrator to dismiss on the ground that Sabatelli had waived his right to arbitrate the breach-of-contract issue by litigating his discrimination claims for over a year.

Back in federal court, the district court granted SWC's motion for summary judgment on the discrimination claims. Meanwhile, the arbitrator denied SWC's motion to dismiss and stayed proceedings until the federal suit was completed.

SWC then filed a motion arguing that arbitration was not available on the contract theory because Sabatelli had been pursuing his lawsuit for more than a year. The court ruled in SWC's favor, holding that Sabatelli could not split his claims by pursuing some in court and a related one in arbitration.

## II.

We first review the district court's summary judgment dismissal of the discrimination claims. Sabatelli tried to get his age discrimination claim to trial using circumstantial evidence. There is a prima facie case of age

---

[2] Sabatelli styled the suit as a class action on behalf of terminated SWC employees over 40, but he never moved to certify that class.

discrimination because he was qualified for the position and replaced by someone younger. *See Jackson v. Cal-Western Packaging Corp.*, 602 F.3d 374, 378 (5th Cir. 2010). But the hospital says it constructively terminated Sabatelli because of his poor treatment of staff and failure to improve those relationships after being told of the problem. An inability to get along with coworkers, whoever is at fault for the problem, is a nondiscriminatory justification. *Shackelford v. DeLoitte & Touche, LLP*, 190 F.3d 398, 408 (5th Cir. 1999). So as is often the case with the *McDonnell Douglas* framework for evaluating a circumstantial case of discrimination, Sabatelli's ability to get to a jury depends on whether he can produce evidence that the hospital's reasons were pretextual. *Jackson*, 602 F.3d at 378–79.

We agree with the district court that there is not a fact dispute on pretext or the ultimate question of causation. *Id.* SWC did not give inconsistent reasons for terminating his employment. Its story has never changed: Sabatelli created workplace conflicts and refused to change his behavior. SWC's failing to give Sabatelli 60-days written notice of his termination does not negate that, especially because he chose to resign in lieu of termination. *See EEOC v. Tex. Instr. Inc.*, 100 F.3d 1173, 1182 (5th Cir. 1996). And while Sabatelli tries to use the discriminatory comments of Varner and Alvarado under a "cat's paw" theory, he has not shown that they exercised any leverage over Watson, who belongs to the same protected age group as Sabatelli. *Harville v. City of Houston*, 935 F.3d 404, 413 n.30 (5th Cir. 2019); *Reed v. Neopost USA, Inc.*, 701 F.3d 434, 441–42 (5th Cir. 2012).

A comment from Watson is the basis for Sabatelli's ADA claim. Sabatelli contends that Watson perceived him as mentally impaired—and discriminated against him on that basis—because Watson told him during the termination meeting that "I don't know what you're discussing with your psychiatrist." That is too thin a statement to support a claim of direct discrimination, which is how Sabatelli tries to prove his ADA claim. The

statement does not refer to the decision to let Sabatelli go, so the factfinder must make an inferential leap that Watson fired Sabatelli because he viewed him as mentally impaired. Without more, that statement is not direct evidence of disability discrimination. *See Reed*, 701 F.3d at 441 (citing *Brown v. CSC Logic, Inc.*, 82 F.3d 651, 655–56 (5th Cir. 1996)).

Sabatelli's discrimination claims fail.

## III.

That brings us to the trickier part of this case. Having filed this lawsuit to pursue the discrimination claims, could Sabatelli later arbitrate his contract claim?

We first note that when some claims are arbitrable and others are not, it is not unusual to have separate litigation before an arbitrator and a judge. *See, e.g., Hebbronville Lone Star Rentals, L.L.C. v. Sunbelt Rentals Indus. Servs., L.L.C.*, 898 F.3d 629, 631, 636 (5th Cir. 2018); *Jones v. Halliburton Co.*, 583 F.3d 228, 230, 242 (5th Cir. 2009). That makes sense because "arbitration is a matter of contract." *Rent-A-Center, W., Inc. v. Jackson*, 561 U.S. 63, 67 (2010). It is a way to resolve "disputes—but only those disputes—that the parties have agreed to submit to arbitration." *First Options of Chi., Inc. v. Kaplan*, 514 U.S. 938, 943 (1995). Indeed, the Supreme Court has recognized that "piecemeal litigation" may result when there are "multiple claims, some arbitrable and some not." *KPMG LLP v. Cocchi*, 565 U.S. 18, 19 (2011) (per curiam) (citing *Dean Witter Reynolds Inc. v. Byrd*, 470 U.S. 213, 217 (1985)). So nothing we say should be read to govern a situation when only some claims are arbitrable.

But that is not the situation here. All of Sabatelli's claims are subject to arbitration. He agreed to arbitrate "any . . . claims arising out of or relating to this Agreement, or breach thereof." That broad language easily covers both his discrimination and contract claims. *See Gilmer v. Interstate/Johnson*

*Lane Corp.*, 500 U.S. 20, 23, 35 (1991); *Begole v. N. Miss. Med. Ctr., Inc.*, 761 F. App'x 248, 250 (5th Cir. 2019) (per curiam). Sabatelli does not contend otherwise.

Despite the arbitration agreement, Sabatelli filed this suit in federal court. The suit was allowed to proceed once SWC decided to fight the case on the merits rather than compel arbitration. *See In re Mirant Corp.*, 613 F.3d 584, 587–89, 592 (5th Cir. 2010). Arbitration can be waived. *Nicholas v. KBR, Inc.*, 565 F.3d 904, 907 (5th Cir. 2009). That is what SWC did in not seeking to arbitrate this case after it was filed in federal court. It now contends that Sabatelli's bringing of this lawsuit likewise amounted to a waiver of the arbitration clause.[3]

Waiver of arbitration by litigation conduct—as opposed to an express waiver—is not something we take lightly. Because the Federal Arbitration Act advances a "liberal federal policy" in favor of arbitration, there is a presumption against implied waiver. *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24 (1983); *Miller Brewing Co. v. Ft. Worth Distrib. Co.*, 781 F.2d 494, 496–97 (5th Cir. 1986). The presumption, though, is not insurmountable. A party waives the right to arbitrate by "substantially invoke[ing] the judicial process" to the "detriment or prejudice" of the other side. *Miller Brewing*, 781 F.2d at 497.

---

[3] Defendants argued waiver in the district court, though the court ruled on the alternative argument of claim splitting. We can affirm on "any legal ground in the record." *See Sanders v. United States*, 736 F.3d 430, 435 (5th Cir. 2013) (citations omitted). And waiver of arbitration based on litigation conduct is an issue for the court, rather than the arbitrator, to decide. *Vine. v. PLS Fin. Srvs., Inc.*, 689 F. App'x 800, 802–03 (5th Cir. 2017). That is because "litigation-conduct waiver 'implicates courts' authority to control *judicial* procedures or to resolve issues . . . arising from *judicial* conduct.'" *Id.* at 803 (quoting *Ehleiter v. Grapetree Shores, Inc.*, 482 F.3d 207, 219 (3d Cir. 2007)).

Arbitration waiver is usually asserted against defendants who try out federal court before seeking to arbitrate. *See, e.g., Forby v. One Techs.*, 909 F.3d 780 (5th Cir. 2018); *Mirant Corp.*, 613 F.3d at 584; *Petroleum Pipe Americas Corp. v. Jindal Saw, Ltd.*, 575 F.3d 476 (5th Cir. 2009). That makes sense. It is unusual for the plaintiff who filed the court action to later want to pursue arbitration. Indeed, we appear to have only one case involving a waiver claim against a plaintiff who tried to arbitrate while the lawsuit she filed was still pending. *Nicholas*, 565 F.3d at 907. The impetus for the plaintiff's change of heart in *Nicholas* was removal to federal court, so she was no longer in her desired forum. *Id.* at 906–07.

In this circumstance, when the plaintiff is the reason there is a lawsuit in the first place, the first requirement for implied waiver will generally be satisfied. "[S]hort of directly saying so in open court, it is difficult to see how a party could more clearly 'evince a desire to resolve a dispute through litigation" than filing a lawsuit. *Id.* at 908 (citing *Gulf Guar. Life Ins. Co. v. Connecticut General Life Ins. Co.*, 304 F.3d 476 484 (5th Cir. 2002)). As a general matter, then, Sabatelli substantially invoked the judicial process by filing this lawsuit (and then litigating it for 16 months before trying to arbitrate).

The twist is that Sabatelli did not pursue the breach-of-contract theory when he filed the suit. Waiver applies only if the litigated claim is the "specific" claim the party seeks to arbitrate. *Republic Ins. Co. v. PAICO Receivables LLC*, 383 F.3d 341, 344 (5th Cir. 2004) (citing *Subway Equip. Leasing Corp. v. Forte*, 169 F.3d 324, 328 (5th Cir. 1999). So what is a claim in this context?

As we have said in another context, a "claim" is any allegation stemming from the "same nucleus of operative facts," whatever the theory of recovery. *See ASARCO, L.L.C. v. Mont. Res. Inc.*, 858 F.3d 949, 956 (5th

Cir. 2017).  Sabatelli's claims all related to the same event—his allegedly wrongful termination—between the same parties.  Our earlier evaluation of age discrimination shows the factual overlap.   Sabatelli has argued that SWC's failure to follow the employment agreement's notice procedures demonstrates that SWC's nondiscriminatory explanation is pretextual. Because the theory he seeks to arbitrate involves the same nucleus of operative facts as the ones he pursued in federal court, and his own arguments create an overlap between the two theories of recovery, Sabatelli invoked the judicial process for the claim he now seeks to arbitrate.

Turning to the second waiver requirement, Sabatelli's filing of this lawsuit prejudiced SWC.  "Delay, expense, and damage to a party's legal position" can constitute prejudice.  *Nicholas*, 565 F.3d at 910.  Sabatelli delayed resolution of the case by litigating only his discrimination theories while keeping his breach-of-contract theory on the back burner.  The delay of sixteen months was significant.  *See PAICO Receivables*, 383 F.3d at 347; *Price v. Drexel Burnham Lambert, Inc.*, 791 F.2d 1156, 1159–60 (5th Cir. 1986).  And it would be much more costly for SWC to defend an arbitration after already defending a case in court.  If SWC had known that Sabatelli planned to arbitration the contract claim, it could have sought to resolve the entire case in one arbitration.

Just as we have held for defendants who test the waters of federal court litigation before trying to arbitrate, Sabatelli should not get a "second bite at the apple through arbitration" after he chose to litigate his termination in federal court.  *See Mirant*, 613 F.3d at 590 (citations omitted).

* * *

We AFFIRM the judgment of the district court.

9