Lucinda VINE, Kristy Pond, on behalf themselves and for all others similarly situated, Plaintiffs,

v.

PLS FINANCIAL SERVICES, INC., and PLS Loan Store of Texas, Inc., Defendants.

**EP–16–CV–31–PRM**

United States District Court, W.D. Texas, El Paso Division.

Signed 06/06/2016

*Lehman v. Revolution Portfolio L.L.C.,* 166 F.3d 389, 392 (1st Cir. 1999).

H. Mark Burck, Daniel R. Dutko, Hanszen Laporte L.L.P., Houston, TX, M. Mitchell Moss, Finger & Thurmond, P.C., El Paso, TX, Priscilla Marquez, Scott Hulse, P.C., El Paso, TX, for Plaintiff.

Richard Andrew Bonner, Jose Abelardo Howard–Gonzalez, Mark N. Osborn, Shelly W. Rivas, Kemp Smith L.L.P., El Paso, TX, for Defendant.

### MEMORANDUM OPINION AND ORDER DENYING DEFENDANTS' MOTIONS TO DISMISS AND TO COMPEL PLAINTIFFS TO ARBITRATION

PHILIP R. MARTINEZ, UNITED STATES DISTRICT JUDGE

On this day, the Court considered Defendants PLS Financial Services, Inc. and PLS Loan Store of Texas, Inc.'s "Motion to Dismiss Proceedings and to Compel Kristy Pond to Arbitration" (ECF No. 18) [hereinafter "Pond MTD"], filed on March 23, 2016; Defendants' "Motion to Dismiss and to Compel Lucinda Vine to Arbitration" (ECF No. 19) [hereinafter "Vine MTD"], filed on March 23, 2016; Plaintiffs Lucinda Vine and Kristy Pond's [1] "Re-

---

1. Plaintiffs bring this suit on behalf of them- selves and for all others similarly situated.

sponse and Objection to Defendants' Motions to Dismiss and Compel Plaintiffs to Arbitration" (ECF No. 25–1) [hereinafter "Response"], filed on April 22, 2016; Defendants' "Reply in Support of Motions to Dismiss and to Compel Arbitration" (ECF No. 28) [hereinafter "Reply"], filed on April 29, 2016; Plaintiffs' "Motion to Compel Discovery" (ECF No. 20), filed on April 8, 2016; and Defendants' "Response to Motion to Compel Discovery" (ECF No. 27), filed on April 28, 2016, in the above-captioned cause.

After due consideration, the Court is of the opinion that Defendants' Vine MTD and Pond MTD will be denied for the reasons that follow. The Court will also deny Plaintiffs' Motion to Compel Discovery as moot.

## I. FACTUAL AND PROCEDURAL BACKGROUND

This case arises out of a dispute concerning loans and their nonpayment.[2] Defendants provide short-term loans to borrowers who are required to present post-dated blank personal checks for the amount borrowed plus a finance charge. Pls.' First Am. Class Action Compl. 4, Mar. 11, 2016, ECF No. 17 [hereinafter "Complaint"]. According to Plaintiffs, Defendants inform borrowers that no deposit of the post-dated or blank personal checks will occur. *Id.* Rather, Plaintiffs allege, Defendants make assurances that they secure these post-dated or blank personal checks to verify that the borrowers indeed have bank accounts. *Id.*

Despite these assurances, Plaintiffs allege that Defendants would deposit these post-dated or blank personal checks if a borrower missed a payment. *Id.* This occurred despite Defendants knowing that the accounts on which the checks were drawn had insufficient funds. *Id.* After these checks "bounced," Defendants would threaten the delinquent borrowers with criminal prosecution. *Id.*

If the delinquent borrowers failed to completely repay the loan, Defendants would allegedly take these post-dated or blank personal checks to the "local district attorney's office and represent[ ] to the district attorney [that] the borrower[s] committed theft by check." *Id.*

Plaintiffs Vine and Pond, on behalf of themselves and for all others similarly situated, filed the instant class action lawsuit alleging (1) malicious prosecution, (2) Texas Deceptive Trade Practices Act violations, (3) fraud, and (4) Texas Finance Code § 392.301 violations. *Id.* at 5–7.

Defendants assert that Defendant PLS Loan Store of Texas, Inc. ("Defendant PLS Loan Store")[3] requires all borrowers to agree and sign a Credit Services Agreement ("Agreement"). Pond MTD 2; Vine MTD 2. Defendants provide two Agreements for the Court's review: one attached to the Pond MTD and the other attached to the Vine MTD. Pond MTD Ex. A1; Vine MTD Ex. A1. While Defendants provide an Agreement with Plaintiff Pond's signature, Defendants fail to attach an executed Agreement for Plaintiff Vine.[4] Mark McNall, Vice President of Opera-

2. In considering Defendants' Motions, the Court accepts Plaintiffs' facts as true. *See Suburban Leisure Ctr., Inc. v. AMF Bowling Prods., Inc.,* 468 F.3d 523, 525 (8th Cir. 2006) (stating that a motion to compel arbitration is generally treated as a motion to dismiss for failure to state a claim upon which relief can be granted); *Palcko v. Airborne Express, Inc.,*

372 F.3d 588, 597 (3d Cir. 2004) (noting the same).

3. Defendants do not describe the relationship between Defendants PLS Financial Services, Inc. and PLS Loan Store of Texas, Inc.

4. Defendants attach a blank Agreement to the Vine MTD. *See* Vine MTD Ex. A1.

tions Strategy and Retail Marketing for Defendant PLS Loan Store, avers that "all PLS [Loan Store] customers were required" to sign the Agreement. Vine MTD Ex. A. According to McNall, the Agreement "form is electronically generated when a customer seeks to do business with [Defendant] PLS [Loan Store]." *Id.* "However, executed [Agreements] are not electronically scanned and stored." *Id.* Despite a "diligent search," Defendants have not located Plaintiff Vine's signed Agreement. *Id.*

Curiously, the Agreement attached to the Pond MTD differs textually from the one attached to the Vine MTD.

### A. Pond Agreement

The Pond Agreement includes an Arbitration Provision ("Pond Arbitration Provision"), which provides the following:

> You acknowledge and agree that by entering this [Pond] Arbitration Provision:
>
> (a) YOU ARE GIVING UP YOUR RIGHT TO HAVE A TRIAL BY JURY TO RESOLVE ANY DISPUTE ALLEGED AGAINST [Defendant PLS Loan Store], THE LENDER AND/OR OUR/ITS RELATED THIRD PARTIES;
>
> (b) YOU ARE GIVING UP YOUR RIGHT TO HAVE A COURT, OTHER THAN SMALL CLAIMS TRIBUNAL, RESOLVE ANY DISPUTE ALLEGED AGAINST [Defendant PLS Loan Store], THE LENDER AND/OR OUR/ITS RELATED THIRD PARTIES; AND
>
> (c) YOU ARE GIVING UP YOUR RIGHT TO SERVE AS A REPRESENTATIVE ... OR TO PARTICIPATE AS A MEMBER OF A CLASS ... IN ANY LAWSUIT FILED AGAINST [Defendant PLS Loan Store], THE LENDER AND/OR OUR/ITS RELATED THIRD PARTIES. YOUR DISPUTE MAY NOT BE CONSOLIDATED WITH THE DISPUTE OF ANY OTHER PERSON(S) FOR ANY PURPOSE(S).

Pond MTD Ex. A1, at 3.

The Pond Arbitration Provision also defines its scope:

> [T]he words "dispute" and "disputes" are given the broadest possible meaning and include, without limitation ...
>
> (b) all federal or state law claims, disputes or controversies, arising from or relating directly or indirectly to this Agreement (including the Arbitration Provision); ...
>
> (i) all claims asserted by you ... as a representative and member of a class of persons.

*Id.* at 2.

### B. Vine Agreement

The Vine Agreement is similar to the Pond Agreement in certain key respects: *e.g.*, both contain similar provisions regarding the description of services, disclosure of fees as a finance charge, recovery of collection expenses, and the governing law. *Compare* Pond MTD Ex. A1 *with* Vine MTD Ex. A1. Yet, the Arbitration Provisions in each of the Agreements differ textually. Specifically, the Vine Agreement contains an Arbitration Provision ("Vine Arbitration Provision"), which states the following: "Upon the election by you, [Defendant PLS Loan Store], or Lender, any Claim shall be resolved by binding arbitration ...." Vine MTD Ex. A1, at 3.

The Vine Arbitration Provision also defines its scope:

> "Claim" means any dispute, claim or controversy between you and [Defendant PLS Loan Store] and/or Lender arising from or relating to:
>
> (a) The current credit services agreement, loan, [A]greement, or obligation ...

(d) The actions of you, [Defendant PLS Loan Store], Lender, or third parties, including claims for money damages, penalties, or equitable relief.

Vine MTD Ex. A1, at 3.

Defendants now seek to compel arbitration against both named Plaintiffs.

## II. LEGAL STANDARD

### A. Diversity Case

■■■ Because the present action is based on diversity jurisdiction, the Court must apply state substantive law. *Erie R.R. Co. v. Tompkins*, 304 U.S. 64, 78, 58 S.Ct. 817, 82 L.Ed. 1188 (1938). "[F]ederal courts must apply the choice of law rules in the forum state in which the court sits." *Am. Int'l Specialty Lines Ins. Co. v. Canal Indem. Co.*, 352 F.3d 254, 260 (5th Cir. 2003). The parties also agree that Texas law controls as evidenced by Plaintiffs' Texas state law claims and Defendants' reliance on the Agreement, which contains a Texas governing law clause. *See Sharpe v. AmeriPlan Corp.*, 769 F.3d 909, 915 (5th Cir. 2014) (honoring the parties' agreement that Texas law controls in an arbitration provision). Consequently, the Court will apply Texas law in the instant matter.

### B. Motion to Compel Arbitration

■■ When considering a motion to compel arbitration under the Federal Arbitration Act ("FAA"), a court employs a two-step analysis. "First, a court must 'determine whether the parties agreed to arbitrate the dispute in question.'" *Tittle v. Enron Corp.*, 463 F.3d 410, 418 (5th Cir. 2006) (quoting *Webb v. Investacorp., Inc.*, 89 F.3d 252, 258 (5th Cir. 1996)). "Second, a court must determine 'whether legal constraints external to the parties' agreement

foreclosed the arbitration of those claims.'" *Fleetwood Enters., Inc. v. Gaskamp*, 280 F.3d 1069, 1073 (5th Cir. 2002) (quoting *Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth*, 473 U.S. 614, 628, 105 S.Ct. 3346, 87 L.Ed.2d 444 (1985)). Because no party has argued that external legal constraints have foreclosed the arbitration of the claims at issue in this case, the Court need only conduct the first step of the analysis to resolve the parties' agreement to arbitrate.

■■ The first step of the analysis— whether the parties agreed to arbitrate the dispute in question—consists of two distinct prongs: "(1) whether there is a valid agreement to arbitrate between the parties; and (2) whether the dispute in question falls within the scope of that arbitration agreement." *Id.* at 418–19 (quoting *Webb*, 89 F.3d at 258).

## III. DISCUSSION

### A. Agreement to Arbitrate

#### 1. Valid Agreement

■■■ The FAA "reflects a liberal federal policy favoring arbitration." *Carey v. 24 Hour Fitness, USA, Inc.*, 669 F.3d 202, 205 (5th Cir. 2012) (internal quotation marks and citation omitted). Still, this policy "does not apply to the determination of whether there is a valid agreement to arbitrate between the parties." *Morrison v. Amway Corp.*, 517 F.3d 248, 254 (5th Cir. 2008). Instead, "to determine whether an agreement to arbitrate is valid, courts apply ordinary state-law principles that govern the formation of contracts." *Carey*, 669 F.3d at 205 (internal quotation marks and citation omitted).

The Court, at this juncture, finds that both Plaintiffs agreed to their respective Arbitration Provisions. *See* Pond MTD Ex. A1.[5]

---

5. The Court need not rule on the issue of whether Plaintiff Vine as a purported nonsig-

natory, and those similarly situated, signed the Arbitration Provision because the Court

#### 2. Scope of the Arbitration Clause

■ "To determine the scope of the Arbitration [Provision] at issue in this case, this court must apply Texas rules of contract interpretation." *Tittle*, 463 F.3d at 419. "[A] court construing a contract must read that contract in a manner that confers meaning to all of its terms, rendering the contract's terms consistent with one another." *Indem. Ins. Co. of N. Am. v. W & T Offshore, Inc.*, 756 F.3d 347, 351 (5th Cir. 2014) (quoting *Tittle*, 463 F.3d at 419) (alteration in original). "In doing so, courts should examine and consider the entire writing in an effort to harmonize and give effect to all the provisions of the contract so that none will be rendered meaningless. No single provision taken alone will be given controlling effect; rather, all the provisions must be considered with reference to the whole instrument." *Id.* at 351–52 (quoting *Tittle*, 463 F.3d at 419).

■ "Contracting parties are free to structure their contractual undertaking and allocate risk as they see fit." *El Paso Field Servs., L.P. v. MasTec N. Am. Inc.*, 389 S.W.3d 802, 811–12 (Tex. 2012). "The role of courts is not to protect parties from their own agreements, but to enforce contracts that parties enter into freely and voluntarily." *Id.* at 810–11.

In the Pond Agreement, Plaintiff Pond agreed that her "dispute" would include "*all* federal or state law claims, disputes or controversies, arising from or relating directly or *indirectly* to this Agreement (including the Arbitration Provision)." *See* Pond MTD Ex. A1, at 2 (emphasis added). Moreover, Plaintiff Pond agreed to arbitrate "all claims asserted by [Plaintiff Pond] . . . as a representative and member of a class of persons." *See id.* Similarly, the Vine Arbitration Provision has broad language that encompasses "claims for money damages, penalties, or equitable relief." *See* Vine MTD Ex. A1, at 3.

Plaintiffs' suit arises indirectly from their alleged agreement to receive pecuniary loans. In other words, but for these contractual loans, Defendants would not have allegedly sent bounced checks to a district attorney for criminal prosecution. Thus, the scope of the Arbitration Provision encompasses Plaintiffs' "dispute" as their federal and state law claims are asserted by them as "representative[s] and member[s] of a class of persons." *See* Pond MTD Ex. A1, at 2.

Therefore, the Court finds that Plaintiffs' claims fall within the scope of their respective agreements.

#### B. Arbitration Waiver

■ "Although parties may have an agreement to arbitrate, '[t]he right to arbitrate a dispute, like all contractual rights, is subject to waiver.'" *Al Rushaid v. Nat'l Oilwell Varco, Inc.*, 757 F.3d 416, 421 (5th Cir. 2014) (quoting *Nicholas v. KBR, Inc.*, 565 F.3d 904, 907 (5th Cir. 2009)) (alteration in original). A party, who is seeking arbitration, may waive its right to arbitrate when it (1) "substantially invokes the judicial process" and (2) thereby causes "detriment or prejudice" to the other party. *Id.* (quoting *Miller Brewing Co. v. Fort Worth Distrib. Co.*, 781 F.2d 494, 497 (5th Cir. 1986)). Still, in light of the FAA policy favoring arbitration, "[t]here is a strong presumption against finding a waiver of arbitration." *Id.* at 421–22 (*quoting Republic Ins. Co. v. PAICO Receivables, LLC*, 383 F.3d 341, 344 (5th Cir. 2004)).

---

finds that Defendants waived their right to arbitrate. *See infra* Part III.B. Indeed, Defendants contend that Plaintiff Vine "must have signed and agreed" to the Agreement. *See* Vine MTD 1. Therefore, the Court will assume, *arguendo*, that Plaintiff Vine did sign the Agreement. *See infra* Part III.B.

### 1. Substantially Invokes the Judicial Process

■ "[A] party only invokes the judicial process to the extent it litigates a specific claim it subsequently wants to arbitrate." *Subway Equip. Leasing Corp. v. Forte*, 169 F.3d 324, 328 (5th Cir. 1999).

Plaintiffs assert that Defendants "substantially invoked the judicial process by filing criminal charges before seeking arbitration and therefore, waived its [sic] right to compel arbitration." Resp. 10. Plaintiffs contend that Defendants would submit "Worthless Check Affidavits" to district attorneys' offices across Texas. *Id.* at 4.

#### a. Invoke

■ To begin the inquiry on whether Defendants invoked the judicial process, the Court must examine what "invoking" entails. The Fifth Circuit has "use[d] the term [invoking] to describe the act of implementing or enforcing the judicial process, not the act of calling upon for support or assistance, as say, one would invoke a spirit or the elements." *Subway Equip. Leasing Corp.*, 169 F.3d at 329. To invoke the judicial process, the waiving party must "engage in some overt act in court that evinces a desire to resolve the arbitrable dispute through litigation rather than arbitration." *Id.*

#### b. Criminal Law and Arbitration

Courts have rarely encountered the issue present here: whether a party, who affirmatively submits documentation for the initiation of criminal charges and attendant proceedings, has invoked the judicial process and thereby waived arbitration in a subsequent civil action. However, a Texas appellate case is instructive: *In re Christus Spohn Health System Corporation*, 231 S.W.3d 475, 481 (Tex. App.–Corpus Christi 2007, no pet.).

*Christus Spohn* was a premises liability case arising out of a murder in a hospital parking garage. Debra Slough worked as a nurse for a hospital. *In re Christus Spohn Health Sys. Corp.*, 231 S.W.3d at 478. Tragically, Jesus Alvarez abducted Slough from the hospital parking garage and murdered her. *Id.* Slough's husband filed a civil suit against the hospital, which temporarily overlapped with the criminal case against Alvarez. *Id.* The hospital defendant did not ask for arbitration until the lawsuit had been pending for fourteen months, during which time "the parties [had] substantially litigated the case" by engaging in voluminous discovery. *Id.* at 480.

As part of its strategy in the civil case, the hospital sought an order of contempt against the husband's counsel in the criminal case. *Id.* at 481. Specifically, the hospital pursued a contempt proceeding because it believed that the husband's counsel was seeking to obtain Alvarez's sworn statement. *Id.* The hospital aimed to prevent the husband's counsel from using Alvarez's sworn statement against the hospital in the civil trial. *Id.*

The Texas court of appeals noted that while it "ordinarily would not consider actions in a separate cause as indicative of waiver," the hospital's actions in the criminal case were "part of its strategic plan of defense in the underlying matter that would be inconsistent with a right to arbitrate." *Id.* Therefore, the Texas appellate court concluded that a party can invoke the judicial process by strategically filing a contempt motion in a related criminal matter. *See id.*

While instructive, this case is neither binding upon the Court nor does it compel a certain result.

#### c. Application

■ Although the Court is cognizant that "[t]here is a strong presumption against finding a waiver of arbitration," *see Al Rushaid*, 757 F.3d at 421–22, Defendants in the instant action have invoked the judicial process to litigate "a specific claim [they] subsequently want[ ] to arbi-

trate." *See Subway Equip. Leasing Corp.*, 169 F.3d at 328.

▮ Specifically, Defendants have initiated a process that invites Texas district attorneys' offices to address issues that are at stake in the instant action. For instance, Plaintiffs' malicious prosecution claim contains the element of a plaintiff's innocence.[6] Since Plaintiffs would likely contest the criminal charges of theft by check, the issue of their innocence would necessarily have to be litigated in this prior-filed criminal proceeding. To be sure, Plaintiffs' other three current civil claims—Texas Deceptive Trade Practices Act violations, fraud, and Texas Finance Code § 392.301 violations—all would involve Plaintiffs raising the defense in their criminal actions that Defendants misled or threatened Plaintiffs in order to obtain the amount owed. Again, this would entail claims that necessarily have to be litigated in a previously filed criminal proceeding.

The Fifth Circuit precedent does not require that a defendant litigate *identical* claims to invoke the judicial process, but rather "a *specific* claim it subsequently wants to arbitrate." *See Subway Equip. Leasing Corp.*, 169 F.3d at 328 (emphasis added). The specific claim in the instant action concerns the issue of non-payment from which all Plaintiffs' causes of actions derive.

Similar to the hospital in *Christus Spohn*, Defendants have elected to accuse Plaintiffs of theft by check and initiate criminal proceedings as "part of [their] strategic plan of defense in the underlying matter that would be inconsistent with a right to arbitrate." *See In re Christus Spohn Health Sys. Corp.*, 231 S.W.3d at 481. If what Plaintiffs allege is true, Defendants conduct is merely a pretext to obtain a favorable ruling, which Defendants can then use in either defending or prosecuting a lawsuit brought by or against Plaintiffs in an arbitration proceeding. Defendants allegedly engaged in the overt act of representing to Texas district attorneys that Plaintiffs had committed theft by check in criminal court proceedings, which "evinces a desire to resolve the arbitrable dispute through litigation rather than arbitration." *See Subway Equip. Leasing Corp.*, 169 F.3d at 329.

While Defendants, unlike the hospital in *Christus Spohn*, have not conducted extensive discovery, the Court finds that Defendants have sought to gain a significant benefit by engaging the criminal justice system. To be sure, Defendants are not afforded a "second bite at the apple" through arbitration. *Cf. Cargill Ferrous Int'l v. SEA PHX. MV*, 325 F.3d 695, 701 (5th Cir. 2003) ("[I]t is clear [the defendant] is not gaming the system by seeking a win at trial, and in the case of a loss, anticipating a second bite at the apple through arbitration.").

The Court concludes that Defendants have invoked the judicial process by deploying the criminal justice system to litigate theft by check.[7]

---

6. "To prevail on a malicious-prosecution claim, a plaintiff must establish the following elements: (1) the commencement of a criminal prosecution against the plaintiff; (2) causation (initiation or procurement) of the action by the defendant; (3) termination of the prosecution in the plaintiff's favor; (4) the plaintiff's innocence; (5) the absence of probable cause for the proceedings; (6) malice in filing the charge; and (7) damage to the plaintiff." *Davis v. Prosperity Bank*, 383 S.W.3d 795, 802 (Tex. App.–Houston [14th Dist.] 2012, no pet.) (citing *Richey v. Brookshire Grocery Co.*, 952 S.W.2d 515, 517 (Tex. 1997)).

7. In its Reply, Defendants argue that the "mere filing of a criminal complaint does not establish waiver of an arbitration provision." Reply 4. To support this proposition, Defendants cite a laundry-list of various published and unpublished federal district court cases and a New Jersey appellate case. *See id.* Yet, Defendants fail to provide any analysis or

### 2. Prejudice to Plaintiffs

"Prejudice in the context of arbitration waiver refers to delay, expense, and damage to a party's legal position." *Nicholas*, 565 F.3d at 910. One way a defendant can damage a plaintiff's legal position is by issue preclusion, which can be applied in a civil case after a prior criminal conviction. *See Wolfson v. Baker*, 623 F.2d 1074, 1077 (5th Cir. 1980) ("[T]he general doctrine of [issue preclusion], which bars relitigation of an issue actually and necessarily decided in a prior action is as applicable to the decisions of criminal courts as to those of civil jurisdiction.") (internal citations and quotation marks omitted). "Because of the existence of a higher standard of proof and greater procedural protection in a criminal prosecution, a conviction is conclusive as to an issue arising against the criminal defendant in a subsequent civil action." *United States v. Thomas*, 709 F.2d 968, 972 (5th Cir. 1983) (citing *In re Raiford*, 695 F.2d 521, 523 (11th Cir. 1983)).

Here, Plaintiffs' legal position would be compromised in a civil action if Plaintiffs were convicted of theft by check. *See Nicholas*, 565 F.3d at 910. This is true because Defendants may seek to use these criminal convictions in a successive civil action as either a sword in prosecuting their civil claims initiated by Plaintiffs or as a shield to defend themselves in a civil matter against Plaintiffs. *See Wolfson*, 623 F.2d at 1077.

In addition, Plaintiffs would necessarily be required to bear the expense of defending the criminal allegations. *See Nicholas*, 565 F.3d at 910. Therefore, the Court also concludes that Defendants' invocation of the judicial process has prejudiced Plaintiffs in this respect.

Because Defendants have invoked the judicial process and its use will prejudice Plaintiffs, the Court finds that Defendants have waived their right to invoke the Agreement's Arbitration Provision.

### C. Motion to Compel Discovery

Plaintiffs seek to obtain pre-arbitration discovery from Defendants in an effort to challenge the arbitrability of the instant action. *See* Pls.' Mot. to Compel Disc. 2. Given that the Court has found an arbitration waiver, the Court will deny Plaintiffs' Motion to Compel Discovery as moot.

## IV. CONCLUSION

Accordingly, **IT IS ORDERED** that Defendants PLS Financial Services, Inc. and PLS Loan Store of Texas, Inc.'s "Motion to Dismiss Proceedings and to Compel Kristy Pond to Arbitration" (ECF No. 18) is **DENIED.**

**IT IS FURTHER ORDERED** that Defendants PLS Financial Services, Inc. and PLS Loan Store of Texas, Inc.'s "Motion to Dismiss and to Compel Lucinda Vine to Arbitration" (ECF No. 19) is **DENIED.**

**IT IS FURTHER ORDERED** that Plaintiffs' "Motion to Compel Discovery" (ECF No. 20) is **DENIED** as **MOOT.**

---

justification to convince the Court of the applicability of these cases to the instant action. Above all, none of the cases are binding on the Court nor do they compel a different result in this case.