KATHLEEN CARDONE, UNITED STATES DISTRICT JUDGE
On this day, the Court considered Defendant Jorge Carlos Vergara Madrigal's Motion to Compel Arbitration, ECF No. 107, and Motion to Stay Discovery Pending Determinations of Arbitrability, ECF No. 118. For the reasons set forth herein, the Motion to Compel Arbitration is DENIED . Additionally, the Motion to Stay Discovery is DENIED as moot.
I. BACKGROUND
A. Factual Background
This case arises from a dispute that concerns the business interests of former spouses. The factual background is extensive and has been set out in the Court's Order from December 9, 2016, which denied Defendant's Motion to Dismiss for Forum Non Conveniens. See Tellez v. Madrigal , 223 F.Supp.3d 626, 631-33 (W.D. Tex. 2016). Accordingly, the recitation of facts here is abridged.[1]
Angelica Fuentes Tellez ("Plaintiff") and Jorge Carlos Vergara Madrigal ("Defendant") married in 2008. Am. Compl. 1, ECF No. 16. Together, they jointly own Grupo Omnilife S.A. de C.V. ("Grupo Omnilife"). Id. Grupo Omnilife is a holding company based in Mexico that owns and operates an international network of vitamin and mineral manufacturers and distributors that operate in eighteen countries. Id. Omnilife USA, Inc. ("Omnilife USA"), a Texas Corporation, runs Grupo Omnilife's operations in the United States. Id.
In February 2015, Plaintiff and Defendant executed an Owners' Agreement to provide procedures for the sale of Grupo Omnilife and its affiliated entities in the event of either Plaintiff's or Defendant's death or disability. Id. at 5 n.1. The Owners' Agreement contains an arbitration clause covering disputes related to or arising out of the Owners' Agreement. Id.
In March 2015, Defendant learned that Plaintiff had plans to divorce him. Id. at 2. Concerned that Plaintiff would liquidate her shares of Grupo Omnilife-worth hundreds of millions of dollars-Defendant designed a scheme directed at Plaintiff with the aim of keeping Plaintiff's shares for *753 himself. Id. The scheme included Plaintiff's removal as CEO of Grupo Omnilife, various acts of coercion, and threats to Plaintiff's safety and reputation. Id.
B. Procedural Background
Plaintiff filed her Original Complaint on October 19, 2015, asserting three claims under the Racketeering Influenced and Corrupt Organizations Act, 18 U.S.C. § 1962(b), (c), and (d) ; a claim under Texas Business Organizations Code §§ 21.218 and 21.222 for examination of books and records of Omnilife USA; a claim for equitable accounting under Texas law; a claim to place Omnilife USA under a rehabilitative receivership under Texas Business Organizations Code § 11.404 ; a claim for breach of informal fiduciary duty under Texas law; and a claim for defamation per se under Texas law. See Compl. 12-24, ECF No. 1.
On November 13, 2015, Defendant responded with a Motion to Dismiss for Lack of Personal Jurisdiction and Failure to State a Claim. ECF No. 8. Plaintiff then filed her Amended Complaint on December 12, 2015, which asserted the same claims as the original complaint. On January 12, 2016, Defendant again responded with a Motion to Dismiss for Lack of Personal Jurisdiction and Failure to State a Claim. ECF No. 22. Later, on March 8, 2016, Defendant filed a Motion to Dismiss for Forum Non Conveniens. ECF No. 44.
On September 16, 2016, the Court denied Defendant's Motion to Dismiss for Lack of Personal Jurisdiction. ECF No. 67. Afterwards, on November 3, 2016, Defendant filed a Motion for Reconsideration and Alternative Request for Interlocutory Appeal. ECF No. 70. Two days later, on November 5, 2016, the Court denied Defendant's Motion to Dismiss for Failure to State a Claim. ECF No. 71. Likewise, on December 9, 2016, the Court denied Defendant's Motion to Dismiss for Forum Non Conveniens. ECF No. 78.
Between January and May of 2017, the parties attempted to resolve their dispute through mediation. See ECF No. 84-93. During that period, the Court stayed and abated the case per the parties' request. ECF No. 87. Then, on May 3, 2017, after mediation failed and the stay was lifted, Defendant filed his Petition for a Writ of Mandamus with the Fifth Circuit to vacate this Court's denial of his Motion to Dismiss for Forum Non Conveniens. ECF No. 97. Not long after, on May 31, 2017, Defendant filed his Motion to Compel Arbitration ("Motion") based on the arbitration clause in the Owners' Agreement. ECF No. 107. On June 13, 2017, the Fifth Circuit denied Defendant's Petition. ECF No. 109. The day after, on June 14, 2017, Plaintiff filed her Response to Defendant's Motion ("Response"). ECF No. 110. Defendant then filed his Reply to Plaintiff's Response ("Reply") on June 21, 2017. ECF No. 112.
II. DISCUSSION
Plaintiff argues in her Response that Defendant's Motion should be denied because Defendant waived his right to arbitrate by litigating these claims in this Court for nineteen months before moving to compel arbitration. Response 5-7, ECF No. 110. In his Reply, Defendant essentially makes three arguments: (1) that waiver is a threshold issue presumptively for an arbitrator to decide (2) that the parties' arbitration agreement expressly requires arbitration of the waiver issue and (3) that Plaintiff fails to establish waiver. Reply 4-10, ECF No. 112. The Court addresses each of Defendant's arguments in turn.
A. Litigation-Conduct Waiver Is Presumptively an Issue for Courts to Decide
Defendant contends that "[a]s a matter of Supreme Court precedent, arbitral *754 tribunals, not courts, should decide 'allegations of waiver, delay, or a like defense to arbitrability.' " Id. at 9 (quoting Howsam v. Dean Witter Reynolds, Inc. , 537 U.S. 79, 83, 123 S.Ct. 588, 154 L.Ed.2d 491 (2002) ). Defendant argues further that "courts presume that the parties intend arbitrators ... to decide disputes about the meaning and application of particular procedural preconditions ... including claims of waiver." Id. at 9 n.55 (quoting BG Group, PLC v. Republic of Argentina, --- U.S. ----, 134 S.Ct. 1198, 1207, 188 L.Ed.2d 220 (2014) ). Therefore, in Defendant's view, waiver is an arbitrability dispute that is presumptively for an arbitrator to decide.
The Court disagrees that the answer is so simple. Supreme Court precedent establishes that two classes of questions are implicated by a motion to compel arbitration. See Howsam , 537 U.S. at 83-85, 123 S.Ct. 588. On the one hand, questions that concern "whether there is a contractual duty to arbitrate" are presumptively for courts to decide. BG Group , 134 S.Ct. at 1206. Those questions include "whether the parties are bound by a given arbitration clause," or "whether an arbitration clause in a concededly binding contract applies to a particular type of controversy." Id. (quoting Howsam , 537 U.S. at 84, 123 S.Ct. 588 ). On the other hand, questions that concern "when the contractual duty to arbitrate arises" are presumptively for an arbitrator. BG Group , 134 S.Ct. at 1207. Those questions include "the meaning and application of particular procedural preconditions for the use of arbitration." Id. In determining whether a question is presumptively for a court or an arbitrator to decide, courts should consider (1) who the parties likely expected would make the decision and (2) the comparative expertise of courts and arbitrators. See Howsam , 537 U.S. at 83-85, 123 S.Ct. 588. Here, the Court must determine whether a court or an arbitrator should decide if Defendant waived his right to arbitration by litigating these claims in this Court, and the Court of Appeals, for nineteen months before filing the instant Motion. While the Supreme Court has not discussed who presumptively decides waiver when it is based on a party's conduct before a court, the Fifth Circuit squarely addressed the issue in a pair of unpublished opinions.
In Tristar Financial Insurance Agency, Inc. v. Equicredit Corp. of America , 97 Fed.Appx. 462 (5th Cir. 2004) (per curiam), the Fifth Circuit rejected the argument that waiver based on a party's conduct before a court is presumptively an issue for an arbitrator to decide. Id. at 464. The court acknowledged that "waiver may be characterized as a procedural issue" and that "the arbitrator generally decides whether the parties complied with the agreement's procedural rules." Id. (citation omitted). Nevertheless, the court reasoned that "[when] waiver depends on the conduct of the parties before the district court ... the court, not the arbitrator, is in the best position to decide whether the conduct amounts to a waiver under applicable law." Id. Elaborating further, the Fifth Circuit explained that "[q]uestions of arbitrability are for the court 'where contracting parties would likely have expected a court to have decided the gateway matter.' " Id. (quoting Howsam , 573 U.S. at 83, 123 S.Ct. 588 ). Given that "[c]ontracting parties would expect the court to decide whether one party's conduct before the court waived the right to arbitrate," the panel held that courts should decide the issue. Id.
More recently, in Vine v. PLS Financial Services, Inc. , 689 Fed.Appx. 800 (5th Cir. 2017) (per curiam), another panel of the Fifth Circuit reached the same conclusion. Id. at 802. Specifically addressing the Supreme Court precedent relied on by Defendant *755 in the instant case, the court acknowledged that Howsam and BG Group referred to waiver as an issue that is presumptively for an arbitrator to decide. Id. at 802-03. Still, the court characterized applying those cases to waiver specifically based on a party's conduct before a court as "misguided." Id. at 803. Looking to the Third Circuit's analysis of the language in Howsam , the court explained that "[p]roperly considered within the context of the entire opinion ... we believe it becomes clear that the [Supreme] Court was referring only to waiver, delay, or like defenses arising from non-compliance with contractual conditions precedent to arbitration ... and not to claims of waiver based on active litigation in court." Id. at 803 (quoting Ehleiter v. Grapetree Shores, Inc. , 482 F.3d 207, 219 (3rd Cir. 2007) ). The Fifth Circuit explained further that "[u]nlike other types of waiver, litigation-conduct waiver 'implicates courts' authority to control judicial procedures or to resolve issues ... arising from judicial conduct.'" Id. (quoting Ehleiter , 482 F.3d at 218 ). Because parties would expect the court to decide litigation-conduct waiver, the panel agreed with the Third Circuit that the Supreme Court did not mean "for arbitrators ... to presumptively decide litigation-conduct waiver." Id.
Accordingly, the Court concludes that litigation-conduct waiver is presumptively an issue for courts to decide. Although Tristar and Vine are unpublished, and therefore not binding authority, see 5th Cir. R. 47.5, the Court finds their analysis convincing. Moreover, their analysis aligns with the Supreme Court's guidance. See Howsam , 537 U.S. at 83-85, 123 S.Ct. 588 (emphasizing the parties' expectations and the decision-maker's comparative expertise when determining whether a question is presumptively for a court or an arbitrator to decide). Litigation-conduct waiver implicates the use of judicial processes and is based entirely on a party's actions before the court. See Vine , 689 Fed.Appx. at 803 ; Tristar , 97 Fed.Appx. at 464. Consequently, parties would likely expect a court to resolve the issue. Also, given the court's direct involvement in the proceedings, courts are in the best position to assess a party's actions and behavior. See Vine , 689 Fed.Appx. at 803 ; Tristar , 97 Fed.Appx. at 464. Therefore, they are comparatively more expert at deciding the question.
Furthermore every circuit to address the issue, save one, has reached the same conclusion. See Martin v. Yasuda , 829 F.3d 1118, 1122-23 (9th Cir. 2016) ; Grigsby & Assocs., Inc. v. M. Sec. Inv. , 664 F.3d 1350, 1353 (11th Cir. 2011) ; JPD, Inc. v. Chronimed Holdings, Inc. , 539 F.3d 388, 393 (6th Cir. 2008) ; Ehleiter , 482 F.3d at 221 ; Marie v. Allied Home Mortg. Corp. , 402 F.3d 1, 14 (1st Cir. 2005). But see Nat'l Am. Ins. Co. v. Transamerica Occidental Life Ins. Co. , 328 F.3d 462, 466 (8th Cir. 2003) (holding, without analysis, that an arbitrator should decide waiver based on a party's earlier state-court actions).
Finally, the issues addressed in the precedent Defendant relies on are not comparable to litigation-conduct waiver. For example, Howsam involved the question of who should decide the application of a particular arbitral forum's time-limit rule. 537 U.S. at 85, 123 S.Ct. 588. Likewise, BG Group involved the question of who should decide the application of a provision that required local litigation before a dispute could be submitted to international arbitration. 134 S.Ct. at 1204. Thus, those cases involved preconditions the parties had to meet before arbitration could commence. They did not touch on the courts' authority to control judicial proceedings or the effect of a party's conduct in front of a court. While Howsam and BG Group admittedly mentioned waiver as an example of an issue that is presumptively for an arbitrator to decide, *756 "waiver is one of those words of indefinite connotation in which our legal literature abounds; like a cloak, it covers a multitude of sins." Arthur L. Corbin, Conditions in the Law of Contract , 28 Yale L.J. 739, 754 (1919). Whatever the meaning of those references to waiver, it is not akin to the species of waiver implicated in this case.
Therefore, taking into account the Fifth Circuit's prior treatment of the issue, the Supreme Court's guidance in Howsam , and the unique nature of litigation-conduct waiver, the Court holds that litigation-conduct waiver is an issue that is presumptively for courts to decide.
B. Litigation-Conduct Waiver Is Not Addressed in the Arbitration Agreement
Next, Defendant contends that the arbitration agreement between the parties is "clear on who decides waiver." Reply 10. Defendant points to a clause in the arbitration agreement that reads: "All Disputes concerning or relating to arbitrability of a Dispute under this Agreement or the jurisdiction of the arbitrators shall be resolved in the first instance by the arbitrators." Id. Consequently, Defendant argues, "[u]nder this clause, [Plaintiff's] assertion that [Defendant] waived his right to arbitrate ... should be resolved by the Tribunal." Id.
The presumption that a court should decide a particular issue may be overcome when there is "clear and unmistakable evidence" of an agreement to the contrary. First Options of Chicago, Inc. v. Kaplan , 514 U.S. 938, 944, 115 S.Ct. 1920, 131 L.Ed.2d 985 (1995) (citation omitted). Still, "a party can be forced to arbitrate only those issues it specifically has agreed to submit to arbitration." Id. at 945, 115 S.Ct. 1920. If an arbitration agreement does not specify who should decide a particular issue, courts should not "interpret silence or ambiguity ... as giving the arbitrator that power, for doing so might too often force unwilling parties to arbitrate a matter they would have reasonably thought a judge ... would decide." Id.
The Court has little difficulty concluding that the clause Defendant relies on is insufficient to overcome the presumption that a court should decide litigation-conduct waiver in this case. While the parties' agreement requires arbitration of "All Disputes concerning or relating to arbitrability ... or jurisdiction of the arbitrators," it is silent on the issue of litigation-conduct waiver. Confronting language that required arbitration of "any claim or attempt to set aside this Arbitration Provision," the panel in Vine likewise found that the agreement did not contain clear and unmistakable evidence of an intent to arbitrate litigation-conduct waiver because it did not "explicitly mention litigation-conduct waiver." 689 Fed.Appx. at 804. Consequently, the Fifth Circuit held that the court below did not err in deciding the issue. Id.
Additionally, the Ninth Circuit recently reached the same conclusion regarding a provision that stated "all determinations as to the scope, enforceability and effect of this arbitration agreement shall be decided by an arbitrator, and not by a court." Martin , 829 F.3d at 1124. Despite the provision's broad language, the Ninth Circuit considered it "insufficient to show an intent that an arbitrator decide the waiver by litigation conduct issue and to overcome the presumption to the contrary." Id. Therefore, the issue remained for the court to decide. Id. ; see also Ehleiter , 482 F.3d at 221 (concluding that an agreement requiring arbitration on "the issue of arbitrability of any claim or dispute" was silent on the issue of litigation-conduct waiver and that the lower court was correct to decide the issue).
Accordingly, the Court rejects Defendant's argument that the parties' agreement is clear on who decides waiver. Because *757 the agreement does not contain an explicit reference to litigation-conduct waiver, the issue remains for the Court to decide.[2]
C. Defendant Has Waived His Right to Arbitration
Having concluded that the Court should decide whether Defendant waived his right to arbitrate these claims based on his conduct before the court, the Court turns to waiver itself. "[T]he right to arbitration, like any contractual right, may be waived." Price v. Drexel Burnham Lambert, Inc. , 791 F.2d 1156, 1158 (5th Cir. 1986) (citation omitted). "[A] party waives its right to arbitrate if it (1) substantially invokes the judicial process and (2) thereby causes detriment or prejudice to the other party." Al Rushaid v. Nat'l Oilwell Varco, Inc. , 757 F.3d 416, 421 (5th Cir. 2014) (internal quotation marks and citation omitted). Nevertheless, "[t]here is a strong presumption against finding a waiver of arbitration, and the party claiming that the right to arbitrate has been waived bears a heavy burden." Republic Ins. Co. v. PAICO Receivables, LLC , 383 F.3d 341, 344 (5th Cir. 2004). The Fifth Circuit has explained that "a bright-line rule is inappropriate for deciding whether a party has waived its right to arbitration." In re Mirant Corp. , 613 F.3d 584, 589 (5th Cir. 2010). Rather, "[t]he question of what constitutes a waiver of the right of arbitration depends on the facts of each case." Walker v. J.C. Bradford & Co. , 938 F.2d 575, 576 (5th Cir. 1991) (citation omitted). The Court addresses each prong separately.
1. Defendant substantially invoked the judicial process
Plaintiff argues that Defendant invoked the judicial process by "filing numerous substantive motions, requesting decisions on the merits and dismissal of defendants." Resp. 5. Plaintiff also notes that Defendant petitioned for a writ of mandamus at the Fifth Circuit after the Court denied his Motion to Dismiss for Forum Non Conveniens. Id. Defendant, on the other hand, argues that he has not invoked the judicial process because he has filed only jurisdictional motions. Reply 6. He notes that neither party has requested or produced any discovery, and that he moved to compel arbitration before filing his answer. Reply 5. In addition, he points out that he did not assert affirmative defenses in his answer or move for summary judgment. Id. He also reminds the Court that he has "consistently and specifically" reserved his right to arbitration. Id.
Defendant's arguments, however, elevate form over substance. Invoking the *758 judicial process is synonymous with "the act of implementing or enforcing the judicial process." Subway Equip. Leasing Corp. v. Forte , 169 F.3d 324, 329 (5th Cir. 1999). To invoke the judicial process, a "party must, at the very least, engage in some overt act in court that evinces a desire to resolve the arbitrable dispute through litigation rather than arbitration." Id. In this case, the Defendant's filings prior to the instant Motion demonstrate a clear interest in litigating this case.
For example, Defendant twice filed a Motion to Dismiss for Lack of Personal Jurisdiction and Failure to State a Claim. ECF No. 8; ECF No. 22. Defendant also filed a Motion to Dismiss for Forum Non Conveniens. ECF No. 44. When his second Motion to Dismiss for Lack of Personal Jurisdiction was denied, Defendant filed a Motion for Reconsideration and Alternative Request for Interlocutory Appeal. ECF No. 70. Similarly, after his Motion to Dismiss for Forum Non Conveniens was denied, he filed his Petition for a Writ of Mandamus with the Fifth Circuit to vacate that decision. ECF No. 98.
Furthermore, in addition to his motions to dismiss, Defendant filed seven motions for an extension of time related to various deadlines. ECF No 17; ECF No. 32; ECF No. 53; ECF No. 54; ECF No. 64; ECF No. 82; ECF No. 98. Likewise, Defendant filed four motions to exceed the page limitation imposed by Local Rule CV-7(d)(3). ECF No. 21; ECF No. 38; ECF No. 39; ECF No. 55.[3] Defendant also filed a motion to stay discovery on two occasions, and at one point, moved to exclude two of Plaintiff's experts. ECF No. 27; ECF No. 57; ECF No. 58; ECF No. 94.
In Janvey v. Alguire , the Fifth Circuit found that a party substantially invoked the judicial process because he "moved to dismiss, filed an initial answer and amended answer, sent written discovery, and answered discovery." 847 F.3d 231, 243 n.11 (5th Cir. 2017). Likewise, in Unity Communications Corp. v. Cingular Wireless , the Fifth Circuit held that "Cingular substantially invoked the judicial process by engaging in discovery, moving to dismiss, moving for summary judgment and taking an appeal to this Circuit before it gave Unity notice of its intent to seek arbitration." 256 Fed.Appx. 679, 681 (5th Cir. 2007) ; see also Price , 791 F.2d at 1158-59 (finding waiver where a party participated in extensive discovery, answered twice, filed motions to dismiss and for summary judgment, and obtained two extensions of pre-trial deadlines).
Although no discovery has occurred and Defendant filed his answer after the instant Motion, he attempted to have this case dismissed on three different grounds, moved the Court for reconsideration of an order, and petitioned the Fifth Circuit for a writ of mandamus. Further, his motions to dismiss were lengthy and complicated. For example, in his second Motion to Dismiss for Failure to State a Claim, Defendant argued that Plaintiff lacked standing to bring a RICO claim, failed to adequately plead the elements of a RICO claim, and lacked standing to bring her claims under the Texas Business Organizations Code. See ECF No. 22 at 28-47; cf. Pacheco v. PCM Const. Servs., L.L.C. , 602 Fed.Appx. 945, 948 (5th Cir. 2015) (finding that a party did not substantially invoke the judicial process where its motions to dismiss "were confined to a single issue ... and were very brief in length.").
Moreover, Defendant's assertion that he has not substantially invoked *759 the judicial process because he has not filed a motion for summary judgment is not compelling. The Fifth Circuit has made clear that "[a] party waives arbitration by seeking a decision on the merits before attempting to arbitrate." E.g. , In re Mirant Corp. , 613 F.3d at 589 (citation omitted). Whether Defendant sought a decision on the merits notwithstanding, other judicial decisions are relevant in considering invocation of the judicial process.[4] In Nicholas v. KBR, Inc. , the Fifth Circuit held that a party invoked the judicial process where she litigated a "very significant legal question" on a motion to remand involving whether her claims were entirely preempted by ERISA. 565 F.3d 904, 909 n.4 (5th Cir. 2009). The preemption question was significant because there was "no guarantee that an arbitration panel would follow the district court's ERISA ruling," which would allow the party to circumvent an adverse ruling. Id.
Here, Defendant has consistently asserted that the parties' dispute should be resolved in Mexico. By denying his Motion to Dismiss for Forum Non Conveniens, this Court concluded that the parties' dispute should be settled in this forum under the applicable law. Defendant now seeks to circumvent that ruling by compelling these claims to arbitration, where there is no guarantee as to what law the arbitration panel would apply or whether this case would ultimately end up in Mexico.[5] Consequently, Defendant has litigated a serious question in this case and now appears to seek arbitration because he was displeased with the outcome.
Finally, the Court finds the timing of the instant Motion problematic. In September 2015, a month before this case was filed, Defendant took the position that he was "not a party to the [Owners' Agreement] or the arbitration agreement." Reply, Ex. A at 2. Later, in his Motion to Dismiss for Forum Non Conveniens, Defendant again asserted that the Owners' Agreement-which contains the arbitration clause he now relies on-was "invalid and ineffective, for a host of reasons" and that, "all disputes between [Defendant] and [Plaintiff] should be resolved in Mexico." Mot. to Dismiss 10 n.5, ECF No. 44. He argued further that "[s]hould this Court not dismiss this lawsuit, and should the arbitration tribunal incorrectly decide that any portion of [Plaintiff's] and [Defendant's] dispute is subject to arbitration, [Defendant] does not waive any right to arbitration he may possess."[6] Id. That motion *760 was filed on March 8, 2016. See ids="3643704" index="88" url="https://cite.case.law/f3d/565/904/">id. Less than three months later, on May 27, 2016, Defendant changed course and acknowledged that the arbitration agreement was indeed valid. Reply, Ex. A at 3. He then filed the instant motion on May 31, 2017, almost exactly a year later, arguing "it is now undisputed that there is a valid arbitration agreement between the parties" and "[t]hat [Plaintiff's] eight claims fall within the arbitration agreement is not only a 'plausible' but a compelling argument." Id. at 11-12.
In In re Mirant Corp. , the Fifth Circuit considered it significant that a party had failed to file to a motion to compel arbitration as an alternative to its motion to dismiss. 613 F.3d at 589-90. Instead of demonstrating its preference to arbitrate, the party sought a decision on the merits "while keeping the arbitration option as a backup plan." Id. at 590. Thus, the court was not convinced that the party, "having learned that the district court was not receptive to its arguments, should be allowed a second bite at the apple through arbitration." Id.
While the Court is mindful that Defendant did not necessarily seek a decision on the merits with his various motions to dismiss, the timing of the instant motion strongly suggests that he was indeed relying on arbitration as a backup plan. See ids="3770800,3703071" index="92" url="https://cite.case.law/f3d/613/584/">id. Even if the Court discounts the time Defendant apparently believed the arbitration agreement was invalid, not once did he indicate a desire to arbitrate these claims after conceding the arbitration agreement's validity. During that year-long period, he filed his Motion for Reconsideration and Alternative Request for Interlocutory Appeal, asked the Court for a stay so the parties could mediate, and filed his Petition for Writ of Mandamus at the Fifth Circuit, all without asserting his right to arbitration. See ECF No. 70; ECF No. 83; ECF No. 97. Although Defendant contends that he consistently reserved his right to arbitrate, that is not comparable to asserting the right. See In re Mirant Corp. , 613 F.3d at 591 (finding that a party failed to make a timely demand for arbitration when it did not move to compel arbitration for eighteen months despite reserving that right in its motions to dismiss). Indeed, only after Defendant's various motions were not resolved to his satisfaction did he move to compel arbitration. Such behavior undermines the policy that "arbitration may not be used as a strategy to manipulate the legal process." Id. at 590 n.4 (quoting Khan v. Parsons Global Servs., Ltd. , 521 F.3d 421, 427 (D.C. Cir. 2008) ).
Accordingly, in light of Defendant's attempts to have the Court dismiss Plaintiff's claims on varying grounds, his petition to the Fifth Circuit when the Court denied those attempts, his inconsistent positions on the availability of arbitration, and his failure to subsequently demand arbitration after conceding the agreement's validity, the Court concludes that Defendant substantially invoked the judicial process because his actions "evince[d] a desire to resolve the arbitrable dispute through litigation rather than arbitration." Subway , 169 F.3d at 329.
2. Defendant's actions prejudiced Plaintiff
Having determined that Defendant substantially invoked the judicial process, the Court must determine whether Plaintiff has been prejudiced by Defendant's actions. See Al Rushaid , 757 F.3d at 421. Plaintiff emphasizes the length of time Defendant delayed in filing the instant Motion. Resp. 2, 5. Also, although she does *761 not provide an exact amount, Plaintiff asserts that she has "responded to each and every substantive motion filed by [Defendant], costing her significant expense." Id. at 5. Plaintiff further argues that she has been prejudiced by "the increased risk of lost recollection and documents frequently caused by delay." Id. In response, Defendant contends that his "timing is justified" as to the filing of the instant Motion. Reply 7. Moreover, he asserts that Plaintiff's failure to quantify her expenses is "fatal to her argument" because "generalized protestations about the cost of delay" are inadequate. Id. at 7-8. Finally, he also argues that there is no damage to Plaintiff's legal position because the parties have not conducted discovery, prepared for trial, or litigated any issues that would have to be litigated again in arbitration. Id. at 8-9.
In the Fifth Circuit, "[a] waiver of an arbitration right will not be lightly inferred without some showing of prejudice." Valero Ref., Inc. v. M/T Lauberhorn , 813 F.2d 60, 66 (5th Cir. 1987). "Prejudice in the context of arbitration waiver refers to delay, expense, and damage to a party's legal position." Nicholas , 565 F.3d at 910 (citation omitted). "While the mere failure to assert the right to demand arbitration does not alone translate into a waiver of that right, such failure does bear on the question of prejudice." In re Mirant Corp. , 613 F.3d at 591. Indeed, "where a party fails to demand arbitration during pretrial proceedings, and, in the meantime, engages in pretrial activity inconsistent with an intent to arbitrate, the party later opposing a motion to compel arbitration may more easily show that its position has been compromised, i.e., prejudiced." Price , 791 F.2d at 1161.
As a preliminary matter, the Court rejects Defendant's assertion that his "timing is justified" as to the filing of this Motion. Reply 7. Plaintiff initiated this action on October 19, 2015. Defendant filed the instant Motion on May 31, 2017. That amounts to a nineteen month lapse in time between the start of this case and Defendant's decision to compel arbitration. Defendant counters that he initially questioned whether the signature on the agreement was actually his and that "only after a forensic expert inspected the original Agreement was [he] able to confirm that he was not challenging the existence of the arbitration clause on those grounds." Id. However, during this period, Defendant did not intimate a desire to arbitrate these claims should the agreement be valid. Rather, Defendant took the position that no part of the parties' dispute was subject to the arbitration agreement.[7] Also, as noted above, Defendant conceded the validity of the arbitration clause as early as May 27, 2016. Reply Ex. A at 3. That left an entire year during which time he delayed in filing the instant Motion. Instead of asserting his right to arbitration, he continued his attempt to have this case dismissed. Consequently, because the Court concludes that Defendant "fail[ed] to demand arbitration during pretrial proceedings, and, in the meantime, engage[d] in pretrial activity inconsistent with an intent to arbitrate," Plaintiff "may more easily show" that she has been prejudiced. See Price , 791 F.2d at 1161.
Additionally, the Court finds no basis for Defendant's contention that Plaintiff's failure to quantify her costs is "fatal to her claim." Reply 7. To the contrary, the Fifth Circuit has found prejudice based on expense *762 without quantifying the party's costs. E.g. , Janvey , 847 F.3d at 244. For example, in Janvey , the Fifth Circuit concluded that prejudice was "apparent on the face of the record" resulting from "delay and increased litigation expenses." Id. at 244. Similarly, in Price , the Fifth Circuit found prejudice where the lower court referenced "mounting attorneys fees" rather than a particular dollar amount. 791 F.2d at 1159 ; see also Unity Commc'ns Corp. , 256 Fed.Appx. at 682. ("[W]e hold that the district court did not clearly err when it found that the time and expense required to respond to Cingular's motion for summary judgment prejudiced Unity."). Therefore, the Court rejects Defendant's assertion that Plaintiff cannot demonstrate prejudice because she did not quantify her costs.
Having concluded that the required showing of prejudice is reduced and that Plaintiff need not quantify her expenses, the Court proceeds to examine the actual delay, expense, and damage to Plaintiff's litigation position. First, while delay could be measured from the time Defendant conceded the validity of the arbitration clause-which would lead to a calculation of twelve months-Defendant unequivocally took the position that the parties' dispute was not subject to arbitration. See Mot. to Dismiss, ECF No. 44 n.5 ("Should this Court not dismiss this lawsuit, and should the arbitration tribunal incorrectly decide that any portion of [Plaintiff's] and [Defendant's] dispute is subject to arbitration ...."). Also, as extensively discussed above, Defendant did not move to compel arbitration for an entire year once he conceded the arbitration clause's validity. Given those facts, the Court does not believe that Defendant would have moved to compel arbitration from the outset in the absence of a dispute concerning the arbitration clause's validity.[8] Therefore, the Court finds that Defendant delayed for a period of nineteen months before moving to compel arbitration.
Concerning expense, although Plaintiff does not provide a dollar amount, she points to the costs specifically related to responding to each of Defendant's motions. Those include a response to Defendant's (1) second Motion to Dismiss for Lack of Personal Jurisdiction and Failure to State a Claim (2) Motion for Protection, to Abate Discovery, and for Scheduling Order (3) Motion to Dismiss for Forum Non Conveniens (4) first and second Motion to Exclude Plaintiff's Experts (5) Motion for Reconsideration and Alternative Request for Interlocutory Appeal and (6) Motion to Stay Discovery. See ECF No. 31; ECF No. 36; ECF No. 51; ECF No. 62; ECF No. 63; ECF No. 80; ECF No. 95. In addition, as previously noted, Defendant sought leave to exceed the page limitation on both his Motion to Dismiss for Lack of Personal Jurisdiction and Failure to State a Claim and his Motion to Dismiss for Forum Non Conveniens. ECF No. 21; ECF No 40. He also included with those motions a 131 page appendix and an 850 page appendix, respectively. ECF No. 22; ECF No. 44. The time and expense of *763 reviewing and responding to such filings is obvious.
Finally, concerning prejudice to Plaintiff's legal position, the Court agrees with Defendant to the extent he argues that Plaintiff has not been prejudiced by discovery proceedings. A party may be prejudiced by damage to its legal position when the opposing party takes "unfair advantage of discovery proceedings which would not have been available in arbitration." Tenneco Resins, Inc. v. Davy Int'l, AG , 770 F.2d 416, 421 (5th Cir. 1985) (quoting Carcich v. Rederi A/B Nordie , 389 F.2d 692, 696 n.7 (2d Cir. 1968) ). For example, a party may suffer prejudice if it is forced to disclose items in discovery that would be undiscoverable in arbitration. See Walker , 938 F.2d at 579 n.3. Likewise, a party suffers prejudice where the opposing party conducts a deposition of a third-party witness that an arbitrator could have disallowed. See Nicholas , 565 F.3d at 911. Because no discovery has occurred, Plaintiff has not suffered this type of prejudice to her legal position.
Be that as it may, however, a party's legal position may be prejudiced when it is forced to re-litigate an issue in arbitration that it already litigated in front of the court. See id. In this case, Defendant moved to have this case dismissed for Forum Non Conveniens. Mot. to Dismiss, ECF No. 44. The Court denied that motion, finding that this is indeed an appropriate forum. Order Denying Mot. to Dismiss, ECF. No. 78. Having lost on that point, Defendant again seeks to have this case dismissed to a different forum, albeit through a different mechanism, in order to litigate "the arbitrability issue of whether [Plaintiff's] eight claims in this action ... fall within an arbitration agreement" between the parties. Reply 1. In essence, then, granting the instant motion would force Plaintiff to again litigate, this time before the arbitral tribunal, the question of where her claims should be heard. The Court further observes that, given Defendant's previous position that the parties' dispute should be resolved in Mexico and that these claims are not subject to arbitration, it would be unsurprising if Defendant rekindled those or similar arguments in arbitration in another attempt to move Plaintiff's claims to Mexico. As noted above, the ICC Rules of Arbitration allow the arbitral tribunal to apply the law it deems appropriate. See ICC Rules of Arbitration, art. 21 § 1. Consequently, it is readily imaginable that Defendant would raise these or similar arguments there.
Accordingly, the Court finds that Plaintiff has been sufficiently prejudiced. Defendant did not make a timely demand for arbitration or even intimate a desire to resolve this dispute through arbitration should his challenges to the validity of the arbitration agreement be unfounded. Nor did Defendant take any action once he conceded the arbitration agreement's validity. Instead, Defendant forced Plaintiff to incur significant legal expenses by responding to his various, voluminous motions and delayed the resolution of this case for more than nineteen months. Additionally, if the case were sent to arbitration, Plaintiff would likely be prejudiced by having to re-litigate where her claims should be heard. Mindful that "a bright-line rule is inappropriate for deciding whether a party has waived its right to arbitration," In re Mirant Corp. , 613 F.3d at 589, the Court concludes that, based on the particular facts in this case, Defendant's invocation of the judicial process has sufficiently prejudiced Plaintiff.
III. CONCLUSION
For the foregoing reasons, Defendant's Motion to Compel Arbitration, ECF No. 107, is DENIED . In addition, Defendant's *764 Motion to Stay Discovery, ECF No. 118, is DENIED as moot.
SO ORDERED .

For the purposes of this Motion, the facts are taken from Plaintiff's Amended Complaint and accepted as true. See Vine v. PLS Fin. Servs., Inc. , 226 F.Supp.3d 719, 723 n.2 (W.D. Tex. 2016).

While Defendant did not directly argue that there is clear and unmistakable evidence of the parties' intent to arbitrate litigation-conduct waiver because the arbitration agreement expressly adopts the International Chamber of Commerce's Rules on Arbitration, the Court briefly addresses this point for the sake of thoroughness. The Fifth Circuit has held that "the express adoption of [an arbitral forum's] rules presents clear and unmistakable evidence that the parties agreed to arbitrate arbitrability." Petrofac, Inc. v. DynMcDermott Petroleum Operations Co. , 687 F.3d 671, 675 (5th Cir. 2012). Be that as it may, the adoption of those rules has no effect in this case on litigation-conduct waiver. Here, the specific rules adopted do not discuss or reference litigation-conduct waiver. Therefore, the holding in Vine that there was not clear and unmistakable evidence because the agreement in that case did not "explicitly mention litigation-conduct waiver" applies with equal force. 689 Fed.Appx. at 804 ; see also Plaintiff's Shareholders Corp. v. S. Farm Bureau Life Ins. Co. , 486 Fed.Appx. 786, 789-90 (11th Cir. 2012) (rejecting the argument that adoption of an arbitral forum's rules was clear and unmistakable evidence of an intent to arbitrate litigation-conduct waiver where the particular rules adopted made no reference to litigation-conduct waiver).

The Court notes that Defendant's second Motion to Dismiss for Lack of Personal Jurisdiction and Failure to State a Claim was 50 pages; his reply to that motion was 43 pages; and his Motion to Dismiss for Forum Non Conveniens was 32 pages. See ECF No. 22; ECF No. 43; ECF No 44.

The Court notes that it is unclear as to whether Defendant sought a decision on the merits. In his Motion to Dismiss for Lack of Personal Jurisdiction and Failure to State a Claim, Defendant prayed that Plaintiff's claims be dismissed with prejudice pursuant to Federal Rule of Civil Procedure 12(b)(2). See Mot. to Dismiss 50, ECF No. 22. Whereas a dismissal for failure to state a claim with prejudice amounts to a decision on the merits, a dismissal based on lack of personal jurisdiction does not. Compare Mahone v. Addicks Util. Dist. of Harris County , 836 F.2d 921, 940 (5th Cir.1988)with Guidry v. U.S. Tobacco Co. , 188 F.3d 619, 623 n.2 (5th Cir. 1999). Without resolving what exactly Defendant prayed for, the Court considers his apparent move to have these claims dismissed with prejudice as further indicative of his desire to resolve this case through litigation rather than arbitration.

The parties' arbitration agreement requires arbitration in accordance with the Rule of the International Chamber of Commerce ("ICC"). Reply, Ex. A-1 at 10. ICC Article 21 states: "The parties shall be free to agree upon the rules of law to be applied by the arbitral tribunal to the merits of the dispute. In the absence of any such agreement, the arbitral tribunal shall apply the rules of law which it determines to be appropriate." ICC Rules of Arbitration, art. 21 § 1.

This is the first instance where Defendant reserved his right to arbitration. It came nearly five months into the case and after Defendant twice filed his Motion to Dismiss for Lack of Personal Jurisdiction and Failure to State a Claim, neither of which referenced or reserved his right to arbitration.

Having asserted that the arbitration tribunal would err if it concluded that the claims in this case are subject to arbitration, Defendant now argues in the instant Motion that he has a "compelling argument" that the claims in this case are covered by the Owners' Agreement. Mot. to Compel 2, ECF No. 107.

To justify his delay, Defendant analogizes to Williams v. Cigna Financial Advisors, Inc. , 56 F.3d 656 (5th Cir. 1995) and Tristar Financial Insurance Agency, Inc. v. Equicredit Corp. of Am. , 97 Fed.Appx. 462 (5th Cir. 2004). The Court finds those cases easily distinguishable. For example, in Williams , the defendant moved to compel arbitration "shortly after it actually discovered that the dispute was arbitrable." 56 F.3d at 661 n.3 (emphasis in original). Likewise, in Tristar , the defendant "was simply unaware of the [arbitration] agreement until it was produced in discovery." 97 Fed.Appx. at 465. Here, Defendant was aware of the agreement but disputed its validity and argued that the parties' dispute was not subject to arbitration. Furthermore, once he conceded the agreement's validity, he delayed a year before moving to compel arbitration. Consequently, those cases are inapposite.